**CITY OF CLEVELAND, Plaintiff,**

v.

**The CLEVELAND ELECTRIC ILLUMI-NATING COMPANY, Defendant.**

**Civ. A. No. C75–560.**

United States District Court,
N. D. Ohio, E. D.

May 18, 1981.

Opinion on Motion to Reconsider
July 13, 1981.

William B. Norris, Hahn, Loeser, Freedheim, Dean & Wellman, James E. Young, Thomas E. Wagner, Director of Law City of Cleveland, Cleveland, Ohio, for plaintiff.

John Lansdale, James P. Murphy, Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

On November 19, 1980 an eleven week trial of the instant action concluded in a mistrial as a result of the jury's inability to reach a verdict. Upon dismissing the jury and declaring a mistrial, the Court scheduled the retrial of this case for January 19, 1981. Upon the motion of the plaintiff City of Cleveland (City) for a continuance, the matter at bar was rescheduled for trial on May 18, 1981.

Presently before the Court is a motion by defendant Cleveland Electric Illuminating Company (CEI) to recognize as binding during the impending retrial some twenty-one (21) Orders issued by the Court during or immediately prior to the initial trial which disposed of certain issues in this case. Among the Orders identified by CEI are the Court's determinations of October 20, 1980 and October 31, 1980, 538 F.Supp. 1306, wherein the Court, in granting in pertinent part the defendant's motions for a directed verdict pursuant to Rule 50(a), Fed.R.Civ.P., concluded, as a matter of law, that insufficient evidence had been adduced to support a number of the plaintiff's substantive claims. The City has responded in opposition to the instant motion.

The Court observes preliminarily that comparatively little authority exists, in both reported cases and learned treatises, upon the status at a retrial of those issues which were the subject of dispositive rulings by the court at the original trial and which therefore were not in issue at the time the case was submitted to the original jury. There is, however, no dispute either among the authorities or between the instant parties, that all issues actually submitted to the

jury at the previous trial may be retried *de novo*. Further, it is uniformly agreed that a mistrial does not affect or invalidate any of the pretrial proceedings in the case. Therefore, the precise concern of this Court is with the viability at the retrial of certain authoritative dispositions propounded during the preceding trial of this action.

In opposing the instant motion, the City contends that a mistrial is "equivalent to no trial", leaving the parties entirely free to relitigate even those matters which were the subject of dispositive rulings in the course of the initial trial. The City urges in particular that it is fully entitled to redeterminations of those rulings which were in any way premised upon the state of evidence at the time of their issuance in that new evidence could, at least conceivably, be introduced which might warrant a departure from the Court's previous determinations. In advancing this contention, the City does not allege that it was denied a full and fair opportunity at the first trial to adduce evidence in support of its various substantive claims. It would appear instead that, in seeking to relitigate the matters which were specifically resolved in the first trial, the City is simply petitioning the Court for an opportunity to accomplish at the retrial that which it was unable to accomplish in the course of the earlier proceeding. The City's insistence upon relitigating previously determined issues ensues notwithstanding the fact that the plaintiff virtually concedes that the overwhelming majority of the Court's original rulings will, if reconsidered in the course of the retrial, ultimately be reaffirmed. And while the City vaguely suggests that new evidence may be introduced at the retrial which might induce the Court to alter or modify certain of its prior dispositions, the plaintiff has made no effort to apprise the Court of the nature and extent of such evidence, the manner in which the evidence might impact upon the Court's former determinations, or the reasons underlying the City's failure to present the evidence in question at the first trial. The plaintiff nonetheless maintains that adherence to the dispositive rulings rendered in the course of the original trial would constitute an inappropriate application of the "law of the case" doctrine which, the City asserts, is purely an appellate principle.

Existing legal precedent quite clearly fails to support the City's foregoing contentions. The case of *Remco, Inc. v. Faber Brothers, Inc.*, 34 F.R.D. 259 (N.D.Ill.1964) is particularly instructive. In that action, the plaintiff, following the district court's declaration of a mistrial, sought to retry a Sherman Act count which had been dismissed at the first trial pursuant to Fed.R. Civ.P. 41(b) for insufficiency of evidence. In concluding that the plaintiff was not entitled to relitigate the previously dismissed count, Judge Hubert Will, in his well-reasoned opinion, stated:

> Plaintiff reasons that, a mistrial having often been said to be no trial at all, the retrial is a de novo litigation of all elements of the previous trial. This neglects to recognize the fact that the decision which the jury was not able to reach—the impasse which necessitates the retrial of this action—related only to the counts still in the case at the time the jury was sent out to deliberate.
>
> The Sherman Act count was held to be invalid as a matter of law. That ruling was based on the insufficiency of plaintiff's evidence. The second trial is not intended to afford either party an opportunity to fortify a position it was unable to maintain in the previous trial. The second trial is limited to a presentation of evidence on issues upon which the jury at the first trial was unable to agree. The retrial is the result of a deadlock upon certain issues submitted to the jury and is thus limited to those issues. 34 F.R.D. at 260.

The opinion in *Remco* recognizes that the fundamental purpose of a retrial is to afford a new jury an opportunity to reach a final disposition of only those issues which were left unresolved by the failure of the original jury to agree upon a verdict. That is to say, a mistrial occasioned by the jury's inability to arrive at a verdict does not convert those matters which were pre-

viously the subject of dispositive rulings by the trial court to matters the litigants are free to relitigate *de novo* in the second trial. Stated differently, a retrial is not designed "to afford either party an opportunity to fortify a position it was unable to maintain at the previous trial." *Id. Accord, Souza v. Corvick,* 441 F.2d 1013, 1017–1019 n.6 (D.C. Cir.1970). To hold otherwise would subject parties at a retrial to either futile litigation to foregone conclusions or to confusing inconsistencies in the rulings of the Court. Of at least equal significance, a contrary result would ignore the established principle that a litigant is generally entitled to but a single opportunity to present and prevail upon his claim; a principle which is fundamental to our system of jurisprudence.[1]

█ *Remco* thus properly counsels that a retrial following a mistrial is a trial *de novo* only as to those issues actually remaining in controversy, *i.e.* those matters which were not the subject of dispositive rulings by the trial court during the course of the earlier proceeding. *United States v. Mischlich,* 310 F.Supp. 669 (D.N.J.1970), *aff'd. sub nom. United States v. Pappas,* 445 F.2d 1194 (3d Cir.), *cert. denied,* 404 U.S. 984, 92 S.Ct. 449, 30 L.Ed.2d 368 (1971), the case authority upon which the City primarily relies, does not hold otherwise. In *Mischlich,* the specific issue before District Judge Steel was whether a criminal defendant's failure to object to venue during the course of his first trial foreclosed the defendant from raising the objection at his retrial. In concluding that the defendant was free to challenge venue at the retrial, the Court opined:

> The declaration of a mistrial renders nugatory all trial proceedings with the same result as if there had been no trial at all. *See* 58 C.J.S. Mistrial at 833–834 (1948).

The situation which exists is analogous to that which results from an appellate reversal and remand for new trial. *See* 5 Am.Jur.2d Appeal and Error § 955 at 382 (1962). The parties are returned to their original positions and, at the new trial, can introduce new evidence and assert new defenses not raised at the first trial. 310 F.Supp. at 672.

It is apparent from the foregoing that *Mischlich* does not address itself to instances where issues were actually raised and specifically resolved by the trial court in the course of the initial trial. That is to say, *Mischlich* does not support the plaintiff's assertion that the right created by a mistrial to "introduce new evidence" or "assert new defenses" attaches to those issues which were the subject of dispositive rulings by the trial court during the course of the first trial. To construe *Mischlich* in the expansive manner proposed by the City would, *inter alia,* ignore the established principle that a disposition entered in the form of a directed verdict pursuant to Fed. R.Civ.P. 50(a) "is necessarily a disposition with prejudice." 5A Moore's Federal Practice ¶ 50.03[1] at p. 50–42 (2d ed. 1980). *Mischlich* then, fairly viewed, merely supports the rule that, as to those issues left unresolved in the first trial, parties at the retrial are not limited by the evidence previously adduced or the tactics formerly employed in the earlier proceeding.

The Court thus finds entirely unpersuasive the City's contention that adherence to the principles espoused in *Mischlich* requires that the retrial of this cause proceed entirely unencumbered by the dispositive rulings heretofore rendered by the Court during the course of the first trial. The Court finds similarly unpersuasive the plaintiff's

---

1. This principle so permeates American jurisprudence that it obtains even at the pleading stage of litigation. Thus a plaintiff who, in drafting his complaint, fails to state a claim upon which relief can be granted invites dismissal pursuant to Rule 12(b)(6), Fed.F.Civ.P., which, in the absence of a contrary specification by the district court, operates as an adjudication on the merits which warrants full *res judicata* effect. *Shaw v. Merrit-Chapman & Scott Corp.,* 554 F.2d 786, 789 (6th Cir.), *cert.*

denied, 434 U.S. 852, 98 S.Ct. 167, 54 L.Ed.2d 122 (1977); *Durham v. Mason & Dixon Lines, Inc.,* 404 F.2d 864, 865 (6th Cir. 1968), *cert. denied,* 394 U.S. 998, 89 S.Ct. 1594, 22 L.Ed.2d 776 (1969); *Cemer v. Marathon Oil Co.,* 583 F.2d 830, 832 (6th Cir. 1978). *Mervin v. Federal Trade Commission,* 591 F.2d 821, 831 (D.C. Cir.1978); *Glick v. Ballentine Produce, Inc.,* 397 F.2d 590, 592–93 (8th Cir. 1968); *Hubicki v. ACF Industries, Inc.,* 484 F.2d 519, 523 (3d Cir. 1973).

assertion that the law of the case doctrine is solely a principle of appellate review which has no application to legal rulings issued by a trial court. As articulated by Professor Moore in his commentary on the law of the case:

> [T]he federal doctrine of the law of the case applies to principles of law enunciated by the trial court and by the appellate courts. When, therefore, a federal court enunciates a rule of law to be applied in the case at bar it not only establishes a precedent for subsequent cases under the doctrine of stare decises, but, as a general proposition, it establishes the law, * * * which it itself will, normally apply to the same issues in subsequent proceedings in that case. 1B Moore's Federal Practice ¶ 0.404[1] at pp. 402–03 (2d edition 1980).[2]

█ For the foregoing reasons, the Court concludes that the dispositive rulings contained in the Orders designated below comprise the law of the case which, in the absence of a convincing showing that the declared law is clearly erroneous and that adherence thereto will "work a grave injustice", 1B Moore's Federal Practice ¶ 0.404[1] at p. 405, shall govern the retrial of this cause commencing May 18, 1981. The Court does not mean to imply, of course, that the fact the following Orders have acquired law of the case status in any way exempts the rulings from the scrutiny of appellate review which may obtain upon the entering of a final judgment in the cause:

1. August 7, 1980— (Denying City's motion for jury instruction on Voir Dire)[3]

2. August 7, 1980— (Defining scope of inquiry at Voir Dire);

3. September 4, 1980— (Denying City's motion to exclude from the venire all CEI or Muny Light customers);

4. September 13, 1980— (Denying City's motion for leave to present evidence to the jury in support of the plaintiff's tolling contentions);

5. September 13, 1980— (Ordering pretrial production of data underlying expert reports);

6. October 1, 1980— (Rejecting CEI's contention that certain settlement transactions served to release the defendant from liability; holding that CEI's liability must be premised upon unilateral conduct);

7. October 14, 1980— (Barring the introduction of certain anticipated expert testimony);

8. October 14, 1980— (Finding the interstate commerce provisions of § 2 of the Sherman act to be satisfied);

9. October 14, 1980— (Barring the introduction of "MELP Meter Bureau Reports", PTX 1816 through 1829 and PTX 2423 and 2424);

10. October 15, 1980— (Finding Constitutional authority for creation of a power surplus by City for resale);

11. October 20, 1980— (Defining the relevant product market; ruling out

---

**2.** *Mischlich* itself appears to be contra authority to the City's assertion that law of the case principles are exclusively appellate and do not obtain in the instant context. *Mischlich* specifically notes that a retrial following a mistrial is analogous to the situation "which results from an appellate reversal and remand". *Id.* at 672. It is beyond peradventure that decisions rendered by an appellate court upon review of a case are binding during any subsequent retrial of the same action held upon remand. *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 16 S.Ct. 291, 40 L.Ed. 414 (1895); *Baltimore & Ohio R. R. v. United States*, 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954 (1929); *Briggs v. Pennsylvania R. R.*, 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948). *See also Wolfe v. Continental Casualty Co.*, 647 F.2d 705 (6th Cir. 1981); *City of Cleve-*

*land v. Federal Power Comm'n.*, 561 F.2d 344, 346 (D.C.Cir.1977). It would thus appear by the reasoning of *Mischlich* that dispositive rulings rendered by a court during a mistrial and rulings promulgated upon review by an appellate court are equally deserving of law of the case status at the retrial of the given action.

**3.** The parenthetical descriptions of the Court's various Orders which apply to the retrial of this matter are here given solely to facilitate reference to the specific Order being cited and the instant description is not in any sense a modification of the original Order nor an independent characterization by this Court of any issue, argument or position. The substantive rulings listed herein speak for themselves.

claims based upon denial of CAPCO membership and other specified allegations; fixing the burden of proof on the issue of natural monopoly);

12. October 23, 1980— (Barring the introduction of evidence relating, to the operation of certain City Divisions);

13. October 23, 1980— (Barring the introduction of PTX 569 as protected by the attorney-client privilege);

14. October 31, 1980— (Defining the scope of permissible argument to the jury regarding the relevant geographic market);

15. October 31, 1980— (Taking judicial notice of certain statutes and their authoritative construction);

16. October 31, 1980— (Barring the use of the "pass-on" defense and limiting any damages for refusal to wheel to the current PASNY contract).

CEI has, in conjunction with its assertion that the City is currently precluded from maintaining that the relevant geographic market consists of the entire service territory of CEI, petitioned the Court for an order barring the introduction of all "evidence concerning CEI's relations with Painesville or CEI's efforts to acquire privately-owned generation in parts of its service area other than the City of Cleveland." This Court has previously intimated, however, *see e.g.* transcript at pp. 1714–1717; 2229–2234, that evidence of anticompetitive conduct undertaken by the defendant outside the Cleveland area may nonetheless be introduced if, *inter alia,* "it tends reasonably to show the purpose and character of the particular transactions under scrutiny". *Federal Trade Commission v. Cement Institute,* 333 U.S. 683, 705, 68 S.Ct. 793, 805, 92 L.Ed. 1010 (1948), *citing Standard Oil Co. v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). The Court is not persuaded that a departure from this tribunal's previous determinations on this matter is currently warranted.

CEI also seeks to exclude from the retrial all evidence concerning the defendant's operation of the 11 kv load transfer points as well as the 69 kv non-synchronous intercon-nection. The Court, however, cannot agree at this juncture of the proceeding that evidence of this nature is necessarily irrelevant to the issues remaining in controversy. The Court will accordingly defer ruling on the matter until the appropriate interval at trial, wherein the defendant's contention can be more properly assessed.

■ CEI further urges the Court to decree that the fact the defendant's so-called Muny Displacement Program may have been "outside the scope" of CEI's tariff with the PUCO, or perhaps "in violation of" said tariff, is of no relevance to the instant action. In assessing this contention, the Court finds its oral pronouncements of October 2, 1980 instructive:

THE COURT: Now, wait a minute. We are talking about two different things now, Mr. Lansdale.

You are talking about whether or not the City should be permitted to introduce evidence that the expenditures incurred for the, or in the course of the MELP displacement program were contrary to the tariffs that CEI had filed with the P.U.C.O.

MR. LANSDALE: Well—

THE COURT: I shouldn't say "contrary". Beyond the tariffs filed with the P.U.C.O.

MR. LANSDALE: Yes.

THE COURT: I think that they are permitted to do that.

However, I do not believe that they can take the next step, namely, that because they are beyond the tariff filed with the P.U.C.O. it infers a violation of State law, ergo, a violation of the Sherman Antitrust Act.

Now, that, you are not going to be able to show, and I will tell you that right now, because that is not the law.

If you are going to show a specific intent here, the specific intent goes to a violation of the Sherman Antitrust Law and not to the violation of some state law. I don't know whether or not the action of a person beyond a tariff filed with the P.U.C.O. constitutes a violation

of state law or of a regulation of the Public Utilities Commission, but that adjudication is not for this Court to undertake, Mr. Lansdale. And I am not going to get into that part of it, either.

That appears to me to be an adjudication to be undertaken with the Public Utilities Commission and any appeals therefrom.

Transcript at pp. 3082–3084.

The Court remains of the opinion that the jury, in assessing the propriety of the defendant's conduct, is entitled to consider the fact that certain of the incentives offered prospective customers under the Muny Displacement Program were not included within the utility's tariff on file with the PUCO. The Court does not intend to permit, however, testimony or argument which opines that conduct undertaken by CEI pursuant to its Muny Displacement Program constituted a *violation* of the applicable state law, as this determination would appear to be one entrusted not to this tribunal but rather to the specialized expertise of the PUCO.

CEI has argued in addition that the plaintiff has, in effect, abandoned its contention that the defendant has, through the Muny Displacement Program, engaged in predatory pricing. It would indeed appear from the record that the City is no longer maintaining that the Muny Displacement Program employed below cost pricing, *see* transcript at pp. 6540–6542, but has instead taken the position that the conduct undertaken by CEI in implementing the program was, notwithstanding the absence of below cost pricing, "sufficiently 'unreasonably anticompetitive' in nature and effect as to be deemed 'predatory' or 'unfair'". Transcript at p. 6609. The Court will, however, in order to afford the parties an opportunity to further enlighten the Court as to their respective positions on this matter, defer ruling on the instant contention until the appropriate juncture at trial.

■ The Court has, after careful consideration, determined that the interests of justice would be best served by deferring ruling on the admissibility of stipulations 226–241, which pertain to the so-called Miller suit. This tribunal does not intend, however, to reconsider its oral ruling of September 19, 1980 insofar as it rejected, as a matter of law, the plaintiff's contention that the conduct described in the stipulations is within the ambit of the "sham" exception to the *Noerr-Pennington* doctrine. *See* transcript at pp. 1243–1266. That is to say, the Court's determination that the defendant's conduct in underwriting the instant taxpayer suit constitutes protected activity under the *Noerr-Pennington* doctrine, and the First Amendment underpinnings thereof, will apply to the retrial proceedings. In light of the fact the stipulations in question may nevertheless be properly introduced into evidence for the limited purpose of demonstrating the purpose and character of the particular transactions under scrutiny upon a showing by the offering party that their probative value outweighs the likely prejudicial effect, the Court will defer ruling on the admissibility of the stipulations until the appropriate interval at trial, at which time the balancing analysis prescribed by the applicable authorities, *see e.g. Feminist Health Center v. Mahommed,* 586 F.2d 530, 543 (5th Cir. 1978), *cert. denied,* 444 U.S. 924, 100 S.Ct. 262, 62 L.Ed.2d 180 (1979), can be more properly undertaken.

■ The parties are in agreement that the exhibits admitted into evidence during the first trial may similarly be admitted at the retrial, provided, of course, the objections previously interposed by the litigants are preserved for purposes of appeal. The Court, being of the view that this suggested procedure will serve to expedite the retrial of this cause, will accede to the parties' request and undertake to implement their proposal at the outset of the retrial proceedings. With regard to those exhibits which were denied admission at the first trial, the Court would advise the parties that it fully intends to adhere to its previous determinations unless and until the Court is persuaded that the defect or defects which precluded a particular exhibit's admission into evidence at the initial trial have, by reason of newly adduced evidence

or otherwise, been remedied in the course of the retrial proceedings. In the absence of such circumstances, the Court will not burden the retrial proceedings by needlessly reconsidering its prior evidentiary rulings.[4]

To facilitate the orderly pretrial of this action, the parties are hereby directed to jointly prepare and submit to the Court, on or before May 22, 1981, a list of those previously admitted exhibits which the litigants are desirous of introducing in the course of the retrial proceeding. The parties are further directed to jointly prepare and submit to the Court by the aforesaid date an additional list identifying those exhibits the litigants are intending to reoffer at the second trial which were denied admission at the previous trial. This latter list shall specify with respect to each exhibit any and all objections the opposing party intends to interpose in the course of the retrial proceeding.

▮ CEI lastly seeks a pretrial order barring, unless prior permission is secured from the Court, the mode of witness interrogation whereby trial exhibits are read verbatim to a witness who has no familiarity whatsoever with the document in question. While the Court agrees that this improper mode of questioning was utilized all too frequently during the initial trial, necessitating repeated admonitions from the Court, the Court will refrain from imposing the requested prohibition at this time. The Court would advise the parties, however, that it will not hesitate to impose such a prohibition in the event counsel for either of the litigants persist in employing this improper technique in the retrial proceedings.

IT IS SO ORDERED.

## ON MOTION TO RECONSIDER

On May 18, 1981 this Court issued a Memorandum and Order designating some sixteen (16) dispositive rulings promulgated during the initial trial of this action as "the law of the case which, in the absence of a convincing showing that the declared law is clearly erroneous and that adherence thereto will 'work a grave injustice' .... shall govern the retrial of this cause ...." Order of May 18 at 6. Among those Orders found to be applicable to the retrial of this action was an Order, 538 F.Supp. 1320, issued October 31, 1980 which held, *inter alia*, that "in the event defendant's refusal to wheel PASNY power is found to be unlawful, no damages may be claimed for any period beyond June 30, 1985." Order of October 31, 1980 at 1320. Presently before the Court is a motion by plaintiff City of Cleveland (City) pursuant to Fed.R.Civ.P. 54(b) to reconsider that portion of the Order of May 18, 1981 which designates the Order of October 31, 1980 as law of the case for the impending retrial of this suit. Defendant Cleveland Electric Illuminating Co. (CEI) has filed a memorandum in opposition to the motion at bar on July 6, 1981.

Rule 54(b), Fed.R.Civ.P., provides in pertinent part:

> * * * any order or other form of decision, however designated, which adjudicates fewer than all the claims * * * is subject to revision at any time before the entry of judgment adjudicating all the claims * * * of all the parties.

By its memorandum in opposition, CEI asserts that Rule 54 is of "questionable" relevance to the decisions here at issue. Rather, the defendant contends, the matters now before the Court are analogous to motions for a new trial under Rule 59 or to vacate judgment pursuant to Rule 60(b). CEI Memorandum at 4. CEI argues that this Court should evaluate the City's instant motion by reference to the standards governing relief from a final order or judgment which obtain under Fed.R.Civ.P. 59 and 60.

---

4. The Court is of the opinion that the evidentiary defects which necessitated exclusion of PTX 569 (*i.e.*, attorney-client privilege) as well as PTX 1816–1829 and 2423–2424 (*i.e.*, inherently unreliable hearsay) are not reasonably susceptible of cure in the retrial of this cause. The Court has accordingly included its Memorandum and Orders of October 14, 1980 and October 23, 1980, 538 F.Supp. 1257, within the list of those prior determinations which will also govern the impending retrial proceedings.

The Court would here note that, notwithstanding the existence in the law of arguable parallels or analogies to the present circumstances, the proper standard of review to be specifically applied when seeking reconsideration of an Order designated as the law of the case is both definite and well-established. As pronounced by this tribunal in its Order of May 18, 1981, a dispositive ruling designated as law of the case may be modified or set aside only by

> a convincing showing that the declared law is clearly erroneous and that adherence thereto will "work a grave injustice", * * *.

Order of May 18, 1981 at 6. *Accord: United States v. Fernandez,* 506 F.2d 1200, 1204 (2d Cir. 1974); *Antonioli v. Lehigh Coal & Navigation Co.,* 451 F.2d 1171, 1178 (3rd Cir. 1971); 1 B Moore's Federal Practice ¶ 404[1] at p. 405 (2d edition, 1980). As stated by the Second Circuit Court of Appeals in *Zdanok v. Glidden Company-Durkee Famous Foods Div.,* 327 F.2d 944, 953 (2d Cir. 1964), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964):

> [W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.

A review of the City's motion now at bar discloses no contention therein that this court articulated an erroneous standard of law as to the sufficiency of proof required to permit the jury to consider a claim for future damages. *See* Order of October 31, 1980, 538 F.Supp. 1320, at 1325, 1326. Further, the plaintiff's instant motion does not allege that this tribunal incorrectly applied the proper substantive law to the evidence adduced by the City at the first trial. Rather, the City seeks to overturn an admittedly proper decision solely so that it might offer additional evidence, most of which the City forthrightly concedes "existed prior to the first trial", Motion for Reconsideration at 4, but which the plaintiff candidly admits was not adduced at the initial trial simply because "the City felt it had introduced sufficient evidence". *Id.* at 5.

 It is plain that the limited discretion of a court to reconsider issues that were authoritatively decided, which discretion should be "exercised sparingly", manifestly does not extend to relieving a party from the proper application of the proper law to all the evidence that the party itself deemed necessary to adduce on the issue. *United States v. Fernandez, supra* at 1204. The City here is simply petitioning the Court for a special opportunity to introduce evidence at the retrial that it alone knowingly chose not to introduce during the first trial. This is contrary to the firmly established principle, recognized by this tribunal in its Order of May 18, 1981, that "a litigant is generally entitled to but a single opportunity to present and prevail upon his claim". Order of May 18 at 4.

Accordingly, the City's motion now at bar is hereby denied.

IT IS SO ORDERED.