**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Lawrence Douglas TODD, Defendant–Appellant, Cross–Appellee.**

**Nos. 89–2262, 89–2345.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 20, 1990.

Decided Dec. 4, 1990.

---

Michael Hluchaniuk, Asst. U.S. Atty. (argued), Bay City, Mich., for plaintiff-appellee cross-appellant.

Richard L. Lee, Jr. (argued), Midland, Mich., for defendant-appellant cross-appellee.

Before KENNEDY and GUY, Circuit Judges, and BROWN, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Defendant Lawrence Todd ("defendant") was tried on October 17, 1988, for conspiracy to distribute and to possess with intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 846. This proceeding, however, resulted in a mistrial. In a second trial, a jury found defendant guilty. The District Court departed downward from the federal sentencing guidelines when it sentenced defendant. Both parties appeal.

Defendant raises five issues on appeal. First, defendant argues that the District Court in the second trial failed to follow the law of the case by admitting evidence in contravention to a previous ruling on the same issue by another court in the trial which ended in a mistrial. Second, defendant contends that the District Court erroneously denied defendant's discovery motion pertaining to certain reports in the government's possession. Third, defendant alleges that there was insufficient evidence to prove certain acts allegedly done in furtherance of the conspiracy. Fourth, defendant argues that the District Court erred by refusing to give the jury a special interrogatory verdict vis-a-vis the quantity of drugs involved in the conspiracy. Finally, defendant alleges that the District Court erroneously predicated defendant's sentence upon defendant's involvement with two kilograms of cocaine. The government cross-appeals and contends that the District Court erred when it departed downward from the federal sentencing guidelines without providing an adequate justification. For the following reasons, we AFFIRM defendant's conviction but REMAND the case to the District Court for resentencing.

I.

Between June of 1986 and April of 1988, Greg Diehl ("Diehl") headed a drug trafficking ring that brought large amounts of cocaine and marijuana from Florida to Michigan for distribution. Dennis Todd, defendant's brother, met Diehl in the fall of 1986 and quickly became a major player in this operation. Diehl and Dennis Todd

would sometimes transport the drugs themselves from Florida to Michigan.

On one of the trips from Florida to Michigan, Diehl and Dennis Todd needed a place to divide up the two kilograms of cocaine they were transporting. Dennis Todd suggested this could be done at defendant's house, so Diehl and Todd drove there. It is at this point that defendant was exposed to this drug operation. At trial, the parties presented conflicting evidence as to whether and to what extent defendant became involved in this conspiracy to distribute drugs.

One account, based on the testimony of Diehl, is that defendant played a minor role in this drug operation. Diehl testified that defendant allowed Diehl and Dennis Todd to divide up the cocaine at his house, providing them with a cake pan and plastic bags. Defendant remained present while the cocaine was being weighed and bagged, and discussed various aspects of the business with Diehl and Dennis Todd. After accomplishing this task, defendant allowed Diehl and Dennis Todd to store the cocaine in his basement.

Diehl also testified that defendant was present in February 1988, when Dennis Todd retrieved four ounces of cocaine from defendant's house and gave it to Diehl. Further, the government introduced into evidence a piece of paper seized at defendant's house on which Diehl and defendant had written information relating to a planned money-laundering scheme. Thus, the government pointed to three particular instances to prove defendant's involvement in the conspiracy with Diehl and Dennis Todd: defendant's acquiescence of Diehl and Dennis Todd preparing two kilograms of cocaine for distribution and storing the cocaine at his house; defendant's presence when Diehl and Dennis Todd removed four ounces of cocaine from defendant's house; and defendant's role in the proposed money-laundering scheme.

The other account of defendant's involvement was based on the testimony of defendant, defendant's girlfriend ("McCloy"), and Dennis Todd. Their testimony portrayed defendant as an unwilling partici-pant when Diehl and Dennis Todd divided the cocaine at his house. Further, defendant did not know that Diehl and Dennis Todd stored cocaine at his house and objected to this practice upon discovery. Although Diehl and Todd attempted to involve defendant in a money-laundering scheme, these witnesses asserted that defendant took no part in the plan. Defendant contends that the government failed to prove that he participated in the measuring, diluting or packaging of cocaine; nor did it prove that he knew cocaine was stored in his house.

## II.

### A. The District Court's Failure to Follow Another Court's Prior Evidentiary Ruling

In an effort to prove defendant's involvement in the money-laundering scheme, the government sought to introduce the testimony of Diehl and a piece of paper on which defendant and Diehl had written information relating to the money-laundering scheme. The document contained information necessary to draft a fraudulent loan document, purporting to show that defendant had loaned Diehl and Dennis Todd $100,000 in order to purchase a bar. In defendant's first trial, the court sustained defendant's objection that this evidence was inadmissible because the money-laundering scheme was beyond the scope of the conspiracy. The mistrial was for reasons unrelated to this evidentiary ruling. In defendant's second trial, the court admitted this evidence, ruling that it was not bound by a prior evidentiary ruling made in the earlier trial which ended in a mistrial. Defendant now asserts that the District Court erred in its ruling because it violated the doctrine of the law of the case. We hold that under these circumstances a coordinate court is not bound by prior evidentiary rulings made during the course of a prior proceeding, but may, in its discretion, reconsider such rulings. Our holding is based on an analysis of three areas of the law: the doctrine of the law of the case; the nature of the ruling revisited by the

court; and the effect of a mistrial on the application of this doctrine.

■ Under the doctrine of the law of the case, a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988) (citing *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983)); 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404[1], at 117 (1988) [hereinafter "Moore's"]. This doctrine applies with equal vigor to the decisions of a coordinate court in the same case and to a court's own decisions. *Christianson*, 486 U.S. at 816, 108 S.Ct. at 2177. The purpose of this doctrine is twofold: (1) to prevent the continued litigation of settled issues; and (2) to assure compliance by inferior courts with the decisions of superior courts. Moore's ¶ 0.404[1], at 118. The Supreme Court has noted that this doctrine will not deprive a court of the power to revisit an issue:[1]

> [T]he law-of-the-case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." ...
> A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances....

*Christianson*, 486 U.S. at 817, 108 S.Ct. at 2178 (quoting *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912)); *In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 664 F.2d 114 (6th Cir.1981) (stating that a transferee court should accord considerable deference to the judgment of a transferor court). The doctrine of the law of the case, therefore, does not foreclose a court from reconsidering issues in a case previously decided by the same court or another court. Ap-

plied to coordinate courts, the doctrine is a discretionary tool available to a court in order to promote judicial efficiency. As such, a decision to reconsider a previously decided issue will be deemed erroneous only if it is shown that the transferee court abused its discretion.

■ We note that other courts have limited a court's discretion to revisit issues previously decided by another court. *See, e.g., Handi Inv. Co. v. Mobil Oil Corp.*, 653 F.2d 391, 392 (9th Cir.1981) (stating that decisions "should be followed unless there is substantially different evidence at a subsequent trial, new controlling authority, or the prior decision was clearly erroneous"). We do not think that such limitations are warranted. It is within the sole discretion of a court to determine if a prior ruling should be reconsidered. Thus, we decline to impose any conditions or limitations upon a court's power to review a prior ruling of another court.

■ The nature of the decision being reconsidered—an evidentiary ruling made during the course of trial—also mandates giving the transferee court broad discretion in this matter. Generally, a trial judge has broad discretion on evidentiary rulings because this type of decision turns upon the evidence as developed during the course of a trial. *United States v. Williams*, 728 F.2d 1402, 1406 (11th Cir.1984) (recognizing that the law-of-the-case doctrine is flexible and that "some deference must be given to [the court's] view of the evidence as the case was presented before [it]"); *United States v. Akers*, 702 F.2d 1145 (D.C.Cir. 1983); *United States v. Dovico*, 261 F.Supp. 862 (S.D.N.Y.1966), *aff'd*, 380 F.2d 325 (2d Cir.), *cert. denied*, 389 U.S. 944, 88 S.Ct. 308, 19 L.Ed.2d 302 (1967). Rigorously applying the law-of-the-case doctrine would undercut the broad discretion that traditionally has been accorded a trial court in these matters.

---

1. The flexibility of this doctrine varies with the context of its application. Between coordinate courts, a court is not deprived of the power to revisit a previously decided issue, so long as the case remains within its jurisdiction. Yet, when a superior court determines the law of the case, an inferior court lacks the power to depart from it. *Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506 (11th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988).

■ Finally, we note that the law-of-the-case doctrine can be applied to rulings made in a case that ends in a mistrial. *Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F.Supp. 1328, 1330 (N.D. Ohio 1981); *cf. Williams*, 728 F.2d at 1406. Otherwise, a court would be required to rule *de novo* on every issue previously decided in a prior proceeding that ends in a mistrial. *Cleveland Elec.*, 538 F.Supp. at 1331; *Remco, Inc. v. Faber Bros.*, 34 F.R.D. 259 (N.D.Ill.1964). This would be inefficient, particularly when the previous trial had progressed considerably. In such a situation the law-of-the-case doctrine would prove useful. A court may recognize and enforce prior rulings based on this doctrine, but also retains the power to reconsider previously decided issues as they arise in the context of a new trial.

■ Based on this analysis, we hold that the District Court did not abuse its discretion when it failed to follow a prior ruling of another court and admitted evidence relating to money-laundering. In admitting this evidence, the District Court did not disregard cavalierly the previous ruling made in the earlier trial but examined the earlier ruling and conducted its own thorough analysis in light of the relevant evidentiary rules. The District Court acted appropriately under these circumstances.

B. Denial of Defendant's Discovery Motion

■ In a pretrial motion, defendant requested copies of certain reports based on interviews that the FBI conducted with Dennis Todd and Patricia Borch ("Borch"), Dennis Todd's girlfriend, characterizing these reports as *Brady* material.[2] The government raised three objections to this motion: (1) the information contained in these reports did not exculpate defendant; (2) the subjects of the interviews had made their statements based on a promise of confidentiality; and (3) defendant knew that Dennis Todd or Borch might have information favorable to his defense and had

access to them. Notwithstanding its objections, the government made these reports available to the District Court for an *en camera* review to determine if they contained exculpatory information inaccessible to defendant through other means. The District Court denied defendant's motion. The District Court reasoned that *Brady* applied to situations in which the government concealed exculpatory evidence from a defendant. In the instant case, defendant was aware of the existence of the potentially exculpatory evidence and had access to the witnesses.

The thrust of defendant's argument is that the awareness of exculpatory statements made by certain individuals and access to such individuals is insufficient to satisfy *Brady* under certain circumstances. Specifically, this alternative is insufficient when a subject's current recollection of a particular act potentially lacks the level of detail contained in written reports based on prior interviews conducted closer in time to the act in question. The FBI interviewed Dennis Todd and Borch a few months after defendant was indicted. Defendant did not have the opportunity to interview Dennis Todd and Borch until approximately one year after the indictment. This time interval, according to defendant, created the potential for Dennis Todd or Borch to omit, intentionally or because of the inability to remember, statements that tend to exculpate defendant. Thus, defendant argues, *Brady* requires that defendant be allowed to discover the FBI reports.

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court established a duty upon the prosecution to disclose to a defendant evidence that is both favorable to a defendant and material to his guilt or punishment. The Supreme Court has stated:

> The *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is

---

**2.** We note that neither of these individuals testified for the government at trial. Thus, we address the narrow question of the extent to which

*Brady* applies to prior statements made by non-government witnesses.

uncovered, but to ensure that a miscarriage of justice does not occur. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive defendant of a fair trial....

*United States v. Bagley*, 473 U.S. 667, 675, 105 S.Ct. 3375, 3379, 87 L.Ed.2d 481 (1985) (footnotes omitted). The Supreme Court has made clear that the *Brady* rule is not an evidentiary rule which grants broad discovery powers to a defendant and that "[t]here is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977). Rather, it safeguards defendant's right to due process of law. Hence, a prosecutor will violate his constitutional duty of disclosure only if "his omission is of sufficient significance to result in the denial of defendant's right to a fair trial." *United States v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976).

We conclude that the government fulfilled its obligations under *Brady*. To be sure, the reports were not turned over to defendant. Yet, defendant was made aware prior to trial that Dennis Todd and Borch had information that possibly could exculpate defendant. Defendant had the opportunity to interview both Dennis Todd and Borch. Indeed, Dennis Todd testified favorably on behalf of defendant, claiming that defendant was unaware that he was storing drugs in defendant's basement. Hence, defendant was aware of the essential facts that would enable him to take advantage of the exculpatory evidence. *See United States v. Wilson*, 901 F.2d 378 (4th Cir.1990) (holding that no *Brady* violation occurred on account of the failure to turn over witness' statements because defendant was free to question witness); *United States v. Hicks*, 848 F.2d 1, 4 (1st Cir.1988) (holding that government need not disclose details of a witness' grand jury testimony when defendant is aware of the

grand jury witness and has access to interview that witness and have the witness testify at trial); *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir.1988) (concluding that no *Brady* violation occurred when defendant "'knew or should have known the essential facts permitting him to take advantage of any exculpatory information'") (quoting *United States v. Gaggi*, 811 F.2d 47, 59 (2d Cir.1987)), *cert. denied*, 488 U.S. 1040, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989); *United States v. Davis*, 787 F.2d 1501, 1505 (11th Cir.) (holding that *Brady* does not apply to situations where the evidence is available to defendant from another source), *cert. denied*, 479 U.S. 852, 107 S.Ct. 184, 93 L.Ed.2d 118 (1986).

Moreover, the government tendered these reports to the District Court for an *en camera* review to determine if they contained exculpatory evidence that defendant would be unable to discover through his own interviews.[3] Given this procedural safeguard, we think that the defendant's due process rights were protected adequately notwithstanding his inability to discover the FBI reports. Accordingly, defendant has failed to prove that the suppression of the FBI reports undermined the integrity of the trial proceedings or its outcome. *See Cruz v. Scully*, 716 F.Supp. 766, 769 (S.D.N.Y.1989); *United States v. Williams*, 529 F.Supp. 1085, 1104 (E.D.N.Y.1981). Finally, our own review of these reports confirms that defendant was not prejudiced by his inability to discover them.

## C. Admission of Evidence

Defendant claims that the court erred by admitting certain evidence to prove defendant's involvement in the manufacture of automatic weapons parts, the planning of a money-laundering scheme and the purchase of airline tickets in furtherance of the conspiracy to distribute drugs. Defendant argues that none of these acts was committed in furtherance of the charged conspir-

---

**3.** With respect to Borch's statements, the District Court concluded that this report, taken as a whole, tended to incriminate defendant rather than exculpate him. Given the content of this

report, *Brady* is inapplicable. *See United States v. Blanco*, 844 F.2d 344, 352 (6th Cir.), *cert. denied*, 486 U.S. 1046, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988).

acy and, therefore, evidence of such acts should not have been admitted.

■ First, the government sought to admit evidence in order to prove that defendant was involved in making automatic weapon parts. The government argued that this evidence was relevant under Rule 404(b) of the Federal Rules of Evidence.[4] As a matter of trial strategy, defendant maintained that he was an unwilling participant or an uninvolved observer of the drug trafficking operation. By introducing this evidence, the prosecution sought to prove defendant's motive or intent with respect to the charged offense. The District Court did not err by admitting the contested evidence for this purpose.

■ Second, the government sought to admit evidence of defendant's involvement in the planning of a money-laundering scheme. Defendant objected to the admission of this evidence on the ground that such acts were not done in furtherance of the conspiracy or were outside of the scope of the crime charged.[5] The court admitted the evidence based either on Rule 801(d)(2)(E) or Rule 404(b).

Money-laundering is an act integrally related to the success of a conspiracy to distribute drugs. *United States v. Dela Espriella*, 781 F.2d 1432, 1436 (9th Cir. 1986); *United States v. Orozco–Prada*, 732 F.2d 1076, 1080 (2d Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92

(1984). Of course, evidence of money-laundering alone is not sufficient to link a person who launders money with a conspiracy to violate narcotics laws. The government must demonstrate a "sufficient link" between defendant's money-laundering and the drug distribution conspiracy in order to prove that defendant was part of the conspiracy. *Dela Espriella*, 781 F.2d at 1436. We conclude that a sufficient link was established in the instant case. The District Court properly admitted the evidence relating to the money-laundering scheme.

■ Finally, the government sought to admit the testimony of Diehl regarding the purchase of airline tickets to Florida for the purpose of picking up drugs. These tickets were purchased from Gerald Todd, an airline employee and the brother of defendant and Dennis Todd. Diehl attempted to testify about statements made by Gerald Todd. Defendant objected to this testimony on the ground that Gerald Todd had been tried previously and acquitted of the charge of conspiracy. Based on this acquittal, Gerald Todd was not part of the alleged conspiracy. Thus, according to defendant, Rule 801(d)(2)(E) did not apply, and Diehl's testimony constituted inadmissible hearsay evidence.

This argument, however, fails to distinguish between the burden of proof necessary to convict a person of a crime—beyond a reasonable doubt—and the burden

---

**4.** Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b).

**5.** Among other evidence, the government wanted to introduce the testimony of a coconspirator regarding statements made between defendant and the coconspirator. The Federal Rules of Evidence provide that this type of testimony is not hearsay if "[t]he statement is offered against a party" and is a "statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E); *see Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (stating that

the evidence must show that there was a conspiracy involving both the declarant and the non-offering party, and that the statement was made in the course of and in furtherance of the conspiracy); *United States v. Hamilton*, 689 F.2d 1262, 1270 (6th Cir.1982) (concluding that the statements need not actually further the conspiracy but are sufficient if they promote the conspiratorial objectives), *cert. denied sub nom. Wright v. United States*, 459 U.S. 1117, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983).

The government also sought to introduce other evidence relating to the money-laundering scheme based on Rule 404(b). Defendant argued that this evidence was not admissible because it was outside the scope of the crime charged in the indictment. The government argued that this evidence was admissible under Rule 404(b) because a person does not conspire to distribute drugs unless he is doing it for money.

of proof necessary to admit evidence—preponderance of the evidence. *United States v. Gil,* 604 F.2d 546 (7th Cir.1979). The *Gil* court stated:

> [O]nce the existence of a joint venture for an illegal purpose, or for a legal purpose using an illegal means, and a statement made in the course of and in furtherance of that venture have been demonstrated by a preponderance of the evidence, it makes no difference whether the declarant or any other "partner in crime" could actually be tried, convicted and punished for the crime of conspiracy.

*Id.* at 549–50.

The District Court concluded that a preponderance of the evidence established that Gerald Todd was a member of the conspiracy and it allowed Diehl's testimony on this issue. The District Court did not err in making this evidentiary ruling.

**D. The District Court's Refusal to Give a Special Verdict Form to the Jury**

Defendant requested that the District Court provide the jury with a special interrogatory so that the jury, if it found defendant guilty, could designate the quantity of cocaine involved in the conspiracy while defendant was a member.[6]

The District Court denied this request, concluding that the quantity of cocaine involved in the conspiracy was not an element of the charged offense and therefore not an issue for the jury.[7] Defendant argues that this denial resulted in an "ambiguous" verdict for sentencing purposes: defendant's guilt could be premised on his involvement with four ounces or two kilograms of cocaine.

██ The use of a special interrogatory is proper when a conspiracy has two objects. *See Orozco–Prada,* 732 F.2d at 1083. In *Orozco–Prada,* the court concluded that defendant's sentence was defective because the basis of his guilt could not be

determined. The defendant was charged with a conspiracy punishable under 21 U.S.C. § 841. The statute established different sentencing ranges for marijuana-related conspiracies and cocaine-related conspiracies. A jury found defendant guilty, and the court sentenced defendant to eight years, a penalty in excess of the statutory maximum established for marijuana-related conspiracies, but within the statutory range for cocaine-related conspiracies. The sentence was held to be unenforceable because, lacking a special interrogatory, the object of the conspiracy—cocaine or marijuana distribution, or both—could not be determined. Similarly, courts have required the use of special interrogatories when defendant's conviction rests on counts charging the violation of multiple statutes, each with different maximum sentences. *United States v. Noah,* 475 F.2d 688 (9th Cir.), *cert. denied,* 414 U.S. 1095, 94 S.Ct. 728, 38 L.Ed.2d 553 (1973); *Brown v. United States,* 299 F.2d 438 (D.C.Cir.), *cert. denied sub nom. Thornton v. United States,* 370 U.S. 946, 82 S.Ct. 1593, 8 L.Ed.2d 812 (1962).

██ The instant case, however, differs from the above cases. The jury in the instant case determined that defendant was involved in a conspiracy involving cocaine. Thus, the verdict presented no ambiguity. The District Court knew that the conviction was based on a cocaine-related offense and could impose a sentence in accordance with 21 U.S.C. § 841(b). To be sure, section 841(b) establishes different maximum sentences depending on the amount of cocaine involved. Yet, this Court has concluded that the amount of drug determined pursuant to section 841(b) is not an element of the offense stated in section 841(a). *See United States v. Moreno,* 899 F.2d 465, 473 (6th Cir.1990); *see also United States v. Wood,* 834 F.2d 1382, 1390 (8th Cir.1987) (holding that § 841(b)(1)(A)(ii) was a sentencing consideration and not an element of

**6.** The government sought to link defendant with the conspiracy based on two separate instances involving cocaine: defendant's storage of four ounces of cocaine on one occasion; and defendant's participation in "cutting" and storing two kilograms of cocaine on a separate occasion.

**7.** The District Court did submit a special interrogatory to the jury so that it could specify whether defendant's involvement in the conspiracy related to cocaine, marijuana, or both.

the offense, and that "there is no constitutional right to jury sentencing, even where the sentence turns upon specific findings of fact"). Accordingly, "the sentencing judge, not the jury, has the prerogative to make a determination of the quantity of drugs involved in the scheme and to sentence accordingly." *Moreno*, 899 F.2d at 473.

We conclude that the District Court did not err in denying defendant's request to submit a special interrogatory to the jury on the issue of the amount of cocaine involved in the conspiracy.

### E. Sentencing

■ Defendant contends that the District Court did not make an adequate factual finding regarding the amount of cocaine involved in the conspiracy. Defendant asserts that the District Court must do more than make conclusions on the record; it must state its rationale upon which these conclusions are based.

When reviewing a District Court's application of the federal sentencing guidelines, an appellate court will reverse a factual finding of a trial court only upon a showing of clear error. The relevant statute states:

> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e) (Supp.1990); *see United States v. Lucas*, 889 F.2d 697, 700 (6th Cir.1989). We believe that the District Court's finding that two kilograms constituted the extent of defendant's involvement in the conspiracy was not clearly erroneous. The court noted that the jury could have believed either that defendant willfully and intentionally helped Diehl and Dennis Todd prepare two kilograms of cocaine for distribution, or that defendant told them to get out of his house and refused to participate. The District Court concluded: "I think the jury chose to believe the former and I think that is a rea-

sonable determination." This statement constitutes an "adequate factual finding" required by the statute.

### F. Departure from the Sentencing Guidelines

After establishing a sentencing range of 57–71 months, the District Court departed from the sentencing guidelines and sentenced defendant to 36 months. The District Court explained its reasons for this departure:

> I am always reluctant to depart from the guidelines because the guidelines are carefully thought out, but I do think in this case, considering all of the facts, that a downward departure is justified. It appears to me that, although I am satisfied that the jury was accurate in its determination, this is the first time this Defendant has been in any trouble, the circumstances are somewhat unusual here, so I am going to depart downward from the guidelines of 57 to 71 months.

The government contends that the District Court erred when it departed from the sentencing guidelines without stating an adequate reason for this departure. We agree.

The federal sentencing guidelines require a court to impose a sentence within the range established by the sentencing guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (Supp.1990). A court can consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission in determining whether the Sentencing Commission adequately took a particular factor into account. *Id.; see United States v. Joan*, 883 F.2d 491, 493 (6th Cir.1989). After conducting this analysis, a court may depart from the sentencing guidelines, but the court must state the "specific reason" for its departure. 18 U.S.C. § 3553(c)(2). This requirement is met if the court provides "a short clear written statement or a reasoned

**409**

statement from the bench." *United States v. Perez*, 871 F.2d 45, 47 (6th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989).

This Court applies a tripartite analysis to determine whether a district court's departure from the sentencing guidelines is justified:

> First, the reviewing court determines whether "the case is sufficiently 'unusual' to warrant departure."
>
> .   .   .   .   .
>
> "Second, we determine whether the circumstances, if conceptually proper, actually exist in the particular case....
>
> Third, once we have assured ourselves that the sentencing court considered circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal, be measured by a standard of reasonableness."

*United States v. Brewer*, 899 F.2d 503, 506 (6th Cir.) (quoting 18 U.S.C. § 3742(e)(2)) (citations omitted), *cert. denied*, —— U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990). In the instant case, the District Court gave two reasons for departure: defendant's lack of a criminal record and "unusual circumstances." Neither reason justifies departure from the sentencing guidelines.

■ The absence of a criminal record is taken into account by the sentencing guidelines. The policy statement in section 4A1.3 provides:

> The lower limit of the range for a Category I criminal history is set for a first offender with the lowest risk of recidivism. Therefore, a departure below the lower limit of the guideline range for a Category I criminal history on the basis of the adequacy of criminal history cannot be appropriate.

United States Sentencing Commission, *Guidelines Manual* § 4A1.3 (Nov.1989). Thus, defendant was not entitled to further reduction based on his status as a first-time offender.

■ The District Court's reference to "unusual circumstances" fails to state a specific reason. Lacking an adequate explanation, this Court cannot engage in a meaningful review of the District Court's decision. *United States v. Kennedy*, 893 F.2d 825, 828 (6th Cir.1990). Thus, we find it necessary to remand this case to the District Court for resentencing.

### III.

For these reasons, we AFFIRM defendant's conviction but REMAND this case to the District Court for the purpose of resentencing defendant in accordance with this opinion and the federal sentencing guidelines.