NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0055n.06

No. 07-2183

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jan 28, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ALONZO BATES, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: BATCHELDER, Chief Judge; GIBBONS, Circuit Judge; MALONEY, Chief
District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Alonzo Bates appeals

from the district court's denial of his motion for a new trial under *Brady v. Maryland*, 373 U.S. 83

(1963). Bates pled guilty to four counts of failing to file a tax return and was convicted on four

counts of theft from a program receiving federal funds and one count of bank fraud. The charges

related to Bates's use of his city-funded payroll during his three years as a Detroit City councilman.

Bates argued before the district court that the government failed to turn over exculpatory and

material evidence in the form of handwritten notes by an FBI case agent that contained two purported

statements made by Bates's former girlfriend, Verenda Arnold. The statements were not included

---

[*]The Honorable Paul L. Maloney, Chief United States District Judge for the Western District
of Michigan, sitting by designation.

1

in the previously disclosed FBI 302 report, authored by the same agent, that detailed the interview with Arnold. The district court rejected Bates's *Brady* claims regarding both purported statements. For the reasons herein, we affirm.

I.

On March 9, 2006, a federal grand jury returned a superseding indictment charging Bates in fourteen counts, including mail fraud, in violation of 18 U.S.C. § 1341 (counts one through four); theft from a program receiving federal funds, in violation of 18 U.S.C. § 666 (counts five through eight); extortion, in violation of 18 U.S.C. § 1951 (count nine); bank fraud, in violation of 18 U.S.C. § 1344 (count ten); and failure to file a tax return, in violation of 26 U.S.C. § 7203 (counts eleven through fourteen). The government alleged that Bates, an elected member of the Detroit City Council, orchestrated a scheme to employ "ghost" employees, including Arnold, who were paid hourly by the city to perform work for the office of Councilman Bates but who actually did not perform their work obligations, thereby stealing money from the city. On August 22, 2006, the first day of trial, Bates pled guilty to all four counts of failure to file a tax return, and the government dismissed the four counts of mail fraud. A jury convicted Bates on four counts of theft from a program receiving federal funds and one count of bank fraud but did not reach a verdict on the extortion count.

On January 30, 2007, Bates moved for a new trial, alleging that the government failed to turn over exculpatory evidence prior to trial in violation of *Brady*. Bates argued that the government did not disclose FBI case agent Michael Haynie's handwritten notes, which indicated that Arnold had said during a government debriefing that Bates did not know that she was not working her assigned

2

twenty hours per week. That statement was not included in the FBI 302 report formally summarizing the debriefing that was authored by Agent Haynie and disclosed to the defense prior to trial. Furthermore, Bates contended that Haynie also omitted from the FBI 302 report the fact that Arnold strongly disagreed with the government's calculation of the hours for which she was wrongfully paid. The government disputed whether Arnold had made the statement relating to Bates's knowledge during the debriefing and argued that Arnold's comment regarding the number of hours billed that she actually worked was made outside the presence of the prosecution team. On the question of whether there was a *Brady* violation, the Government argued before the district court that 1) Arnold's statement as to Bates's knowledge was speculative and therefore inadmissible at trial; 2) in light of the overwhelming evidence at trial, the outcome would not have been different even if the evidence had been admitted; and 3) Bates was on notice of the essential facts contained in the handwritten notes.

The district court held evidentiary hearings on the motion on March 7 and June 12, 2007, and subsequently denied Bates's motion on July 26, 2007. Regarding whether Arnold made a statement during the debriefing that disputed the percentage of hours billed for which she actually worked, the district court found that Bates did not offer any evidence to refute a contradictory assertion made in the affidavit of Arnold's attorney, Robert Harris. Harris had stated that Arnold never made that statement to the prosecution team but rather had made the claim to Harris outside the presence of the prosecution team. Because Bates did not establish that the prosecution team was even aware that Arnold claimed to have worked at least fifty percent of the hours billed, the district court found that

Bates could not establish suppression of that information by the government.[1]  Turning to the issue

of Arnold's statement regarding Bates's lack of knowledge of her failure to work her billed hours,

the district court presumed that Arnold made the statement to the prosecution team during the

debriefing.  The district court concluded, however, that the government's failure to disclose this

information to Bates did not constitute a *Brady* violation because Bates was indisputably aware that

Arnold might be a source of exculpatory evidence and that he reasonably should have interviewed

her on the subject of whether Bates knew of her actual work hours.

On September 20, 2007, the district court sentenced Bates to thirty-three months of

imprisonment.  Bates timely appealed.

## II.

This court "reviews denial of a motion for a new trial based on *Brady* violations under an

abuse of discretion standard," but reviews "the district court's determination as to the existence of

a *Brady* violation . . . *de novo*."  *United States v. Graham*, 484 F.3d 413, 416-17 (6th Cir. 2007)

(citing *United States v. Jones*, 399 F.3d 640, 647 (6th Cir. 2005), and *United States v. Miller*, 161

F.3d 977, 987 (6th Cir. 1998)).

## III.

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon

request violates due process where the evidence is material either to guilt or to punishment,

[1]Bates raises this argument again on appeal.  The district court's conclusion, however, that
Bates had not offered any evidence to refute the statement contained in the affidavit of Arnold's
attorney that Arnold never made this statement to the prosecution team, is fully supported by the
record. Bates does not now cite, nor does a review of the record reflect, any evidence that challenges
the district court's finding.

irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. There is no *Brady* violation, however, "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). As the Court noted in *Kyles v. Whitley*, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." 514 U.S. 419, 434 (1995). We have held that where the defendant was "'aware of the essential facts that would enable him to take advantage of the exculpatory evidence,'" the government's failure to disclose that evidence does not violate *Brady*. *Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004) (citing *United States v. Todd*, 920 F.2d 399, 405 (6th Cir. 1990)). To be entitled to a new trial, a defendant must also show that the suppressed exculpatory evidence "could not have been discovered earlier with due diligence, and is material." *United States v. Corrado*, 227 F.3d 528, 538 (6th Cir. 2000) (citing *United States v. Frost*, 125 F.3d 346, 382 (6th Cir. 1997)).

Bates has not shown that he would have been unable to obtain Arnold's statement regarding his knowledge of work hours through reasonable pretrial due diligence. Rather, the record reflects that Arnold's statement and the related testimony that might result from the discovery of that statement were available to Bates from an easily accessible and known source. Bates has himself argued that his knowledge about whether his employees were working the hours for which they billed was a central issue for the defendant at trial, and the record demonstrates that Bates and his counsel were aware that Arnold might have been able to provide information on that issue. Furthermore, given the more than twenty-five year romantic relationship between Bates and Arnold

5

and the "strong emotional attachment" that Arnold still feels for Bates, Bates and his counsel clearly had access to Arnold pretrial. Bates's trial counsel, Steven Fishman, stated that he had "many conversations" with Arnold's lawyer prior to trial and that Arnold's lawyer "kept [him] apprised of what was going on" with Arnold. (Mot. Hr'g Tr. at 77.) In fact, before Arnold pled guilty, Fishman believed that Arnold "was going to stand trial and claim that she didn't misstate her hours, that she worked those hours and she was supposedly going to explain how she was able to have a full-time job plus work the 20 hours a week for which she was paid." (Mot. Hr'g Tr. at 72.) A reasonable defendant, therefore, "would have pursued that inquiry" by interviewing Arnold prior to trial, "unless, of course, he already knew that the inquiry would not in fact result in exculpatory information." *Spirko*, 368 F.3d at 611. Because Bates was aware of the essential facts that would enable him to take advantage of the exculpatory evidence and could have discovered the evidence prior to trial with due diligence, we affirm the district court's denial of Bates's motion for a new trial.

Even if this Court were to assume that Bates could not have discovered the evidence prior to trial with due diligence, the record demonstrates that Arnold's statement about Bates's knowledge and related testimony on that topic would not have created a "reasonable probability" of a different verdict. *Strickler*, 527 U.S. at 281. Bates argues that "Arnold's proposed testimony, like her statements to agents during the debriefing, would have contradicted everything that the Government was arguing about [Bates's] knowledge of the hours worked/billed by his employees." (Def.'s Br. at 10.) While Arnold's statement and testimony may be viewed as somewhat favorable to Bates, the inconsistencies present in that testimony render it insufficient to have produced a different result at

trial. Although Arnold testified at the evidentiary hearing that Bates did not know when she worked fewer than twenty hours per week, she contradicted herself in explaining that Bates was "very hard on" his employees and required that they take notes at meetings to document and prove that they were there. (Evid. Hr'g Tr. at 13.) Furthermore, Arnold testified that while there "were weeks that [she] worked less than 20 hours" (Evid. Hr'g Tr. at 17), Bates approved all of her time sheets. These statements cast significant doubt on Arnold's claim that Bates lacked knowledge about the hours she worked.

The record also reveals significant questions regarding Arnold's credibility that would impact the value of her testimony at trial. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (approving district court's credibility determination in *Brady* analysis). First, Arnold's long relationship with Bates, the fact that they have a son together for whom Bates pays child support, and Arnold's "strong emotional attachment" and desire not "to see him go to jail" all demonstrate a bias in favor of Bates. (Evid. Hr'g Tr. at 18, 30-31.) Second, the government has identified several instances of untruthfulness in Arnold's testimony that would undercut its value before a jury, including Arnold's lack of candor regarding whether she worked the midnight shift at the hospital leaving her days free, the nature of her relationship with Bates, and whether she did work for Bates during her hours at the hospital.

In light of the inconsistencies in Arnold's testimony and the credibility issues raised by the government, Arnold's statement does not rise to the level of materiality warranting reversal under *Brady*.

IV.

For the foregoing reasons, we affirm the district court's denial of defendant Bates's motion

for a new trial and affirm his convictions.