Michael ZEMUNSKI, Plaintiff,

v.

Michael L. KENNEY, Defendant.

No. CV90–L–195.

United States District Court, D. Nebraska.

Feb. 3, 1992.

Michael Zemunski, pro se. ·

Robert V. Ginn, Brashear, Ginn Law Firm, Omaha, Neb., for petitioner.

Mark D. Starr, Atty. Gen., Lincoln, Neb., for respondent.

## MEMORANDUM OF DECISION

URBOM, Senior District Judge.

The petition for writ of habeas corpus is before me, the magistrate judge having recommended its denial and the petitioner having objected to that recommendation both through counsel and personally. My conclusion, after studying each, is that the petition must be denied.

The magistrate judge's report and recommendation of May 23, 1991, is meticulous and exhaustive. It contains a careful recitation of the applicable cases, the hairline distinctions drawn in those cases and thoughtfully concludes that there was no denial of a constitutional right to a jury trial by the state district court's refusal to allow the petitioner to withdraw his waiver of a jury trial prior to his first trial. I agree with that conclusion.

The objections in the petitioner's counsel's filing are noted and have been considered. They appropriately argue the legal issues.

The petitioner's own objections, contained in filing 29, raise no new legitimate issues. They assert such uncorroborated claims as bias on the part of the state district judges, suspicion of the Nebraska Supreme Court, and shadowy dealings by the judiciary. He says that Judge Endacott "seemed biased against Petitioner" and "a rubber stamp for Judge Fahrnbuch." He says that "many parties, including the Nebraska Supreme Court, tried to mask the mistrial's existence." He is suspicious because "Fahrnbuch was a member of the Nebraska Supreme Court by the time Petitioner's appeal was before the Court though he supposedly did not participate." He doubts that he will ever receive a fair trial from either the judges of the Lancaster County District Court or the Supreme Court of Nebraska. None of these assertions is supported by any facts in the record and, accordingly, are necessarily disregarded.

IT IS ORDERED that the report and recommendation of United States Magistrate Judge David L. Piester of May 23, 1991, filing 22, is adopted.

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

Pending before the court is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, filed by Michael Zemunski, an inmate at the Hastings Correctional Center. The parties have submitted the state court records and their respective briefs on the merits of petitioner's claims, and the matter is now ripe for review.

Petitioner was charged in the District Court of Lancaster County with one count of burglary and one count of possession of burglary tools. Petitioner was ultimately found guilty of burglary, following a bench trial, with the additional count of possession of burglary tools being dismissed upon defendant's motion at the close of the State's case. The court imposed a sentence of not less than thirty months nor more than five years. On appeal to the Nebraska Supreme Court the conviction and sentence were affirmed. *State v. Zemunski,* 230 Neb. 613, 433 N.W.2d 170 (1988). The petitioner has not filed a state postconviction action.

The petitioner has raised two grounds for relief which are interrelated. Petitioner's principal claim is that he was denied his Sixth Amendment right to a trial by jury because the state district court refused to allow petitioner to withdraw his waiver of the right to a trial by jury. The record reveals that the criminal proceedings against the petitioner commenced in the District Court of Lancaster County before the Honorable Dale Fahrnbruch on April 10, 1987. At that proceeding the petitioner waived his right to a jury trial. The matter was then set for trial to the court on April 27, 1987, and was later continued to May 22, 1987.

On May 22 the petitioner moved the court to allow him to reinstate his case to the jury trial docket. The district court overruled that motion, and the trial commenced, but was not completed, on that date. Before the trial could resume, Judge Fahrnbruch suffered a mild heart attack and was unable to continue with the proceedings. On June 4, 1987 the petitioner filed a motion for a mistrial, which was granted by the Honorable Donald Endacott after a brief hearing on June 15, 1987, and trial was scheduled for June 27, 1987.

At the commencement of the second trial on June 27th, petitioner made an oral motion to set aside the petitioner's waiver of a jury trial during the first trial before Judge Fahrnbruch. Petitioner's counsel informed the court that he had, in that earlier proceeding, "counseled [petitioner] that a jury trial waiver was appropriate for the reason that we needed more time for preparation," (36:18–19), and that they had now had sufficient time to prepare for trial," and that the petitioner "would like to exercise his right to have a jury trial rather than have the matter tried to the Court." (36:21–24).

After receiving into evidence the transcripts of the earlier proceedings, the court stated:

Now, I have read this over and the Court finds that jury waiver was made freely, voluntarily, intelligently, and with knowledge and understanding; that the trial court, Judge Fahrnbruch, accepted that. The Court finds that there's not good

and sufficient cause or reason to grant the motion and to restore this to the jury docket. Therefore, the motion is overruled.

(38:12–19). Trial to the court began following that ruling.

In this action petitioner alleges that he was denied his Sixth Amendment right to trial by jury due to the trial court's refusal to allow him, after a mistrial had been declared, to withdraw his earlier waiver of that right. Alternatively, petitioner alleges that his earlier waiver of a jury trial was ineffective because Judge Fahrnbruch did not inform him as to the effect of that waiver in the event of a declaration of a mistrial and subsequent proceedings before another judge.

## EXHAUSTION

■ The petitioner alleges that his claims were raised on direct appeal, and he therefore has properly exhausted all state court remedies. The respondent does not dispute that contention, and indeed does not raise failure to exhaust as a bar to this habeas action. The appellate briefs filed with the Nebraska Supreme Court and submitted as part of this record indicate that both the petitioner and the state did refer to the Sixth Amendment right to trial by jury in the discussion of this issue on appeal. Although few federal cases were relied upon by either party, and despite limited discussion of this issue in constitutional terms, I conclude that the petitioner did adequately raise this claim as a constitutional issue on direct appeal, and that the issue was fully and fairly presented to the Nebraska Supreme Court. Therefore, I conclude that this issue has been fully exhausted by presentment in the state courts.

As noted above, petitioner also alleges that his waiver of the right to a jury trial should have been found to be ineffective solely because it failed to address the mistrial contingency. To the extent that this claim seems to be challenging the validity of the waiver, rather than the effect of the waiver in a later proceeding as challenged in the first claim, I cannot agree that this claim was properly presented to the state

courts in petitioner's direct appeal. Although petitioner cites pages 11 and 12 of his appellate brief submitted to the Nebraska Supreme Court, I do not find such a claim raised therein. The cited pages merely set forth the petitioner's appellate claim that he had a right to withdraw his jury trial waiver once another district court judge was assigned to his case. That claim does not challenge the validity or voluntariness of the waiver in the first trial due to the court's failure to advise the petitioner of the effect of that waiver in any subsequent proceedings.

■ I note that this second claim, which is somewhat loosely fashioned, has been exhausted because there are no available state court proceedings in which the claim could be raised. The claim could have been raised in direct appeal, but was not, and therefore a state postconviction action is not available to petitioner. *State v. Ohler,* 215 Neb. 401, 338 N.W.2d 776 (1983).

Petitioner was represented by counsel on direct appeal, and failed to raise this claim. That procedural default can be overcome in this court on a showing of cause for and prejudice from the default. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). However, the petitioner has wholly failed to discuss or offer any explanation for this default, and I therefore conclude that petitioner has waived his right to present such a claim in this court.

### RIGHT TO TRIAL BY JURY

■ Petitioner does not dispute that at his first trial he voluntarily waived his right to a trial by jury. He now claims, however, that following the mistrial, and upon commencement of the second trial, any waivers from the first trial were rendered null and void. Therefore, petitioner asserts, he was denied his Sixth Amendment right to a trial by jury when the district court, after a mistrial was declared, denied his motion to withdraw his waiver of a jury trial made in the original proceedings.

The facts of this case indicate that on April 10, 1987 the petitioner appeared before District Judge Fahrnbruch. The case was called for trial on that date, "there being a jury present outside of the courtroom waiting to be examined in [the] case." (1:10–11). Defense counsel then made an oral motion to the court to have the case removed from that jury panel and continued to the next jury panel on the grounds that the "defendant has other matters that complicate the preparation for and readiness for trial at this time." (1:15–17). That motion was overruled by the court.

It was after that ruling that petitioner's counsel informed the court that "the defendant's ready to waive a jury trial." (1:20–21). The court then questioned the petitioner at some length on his intentions, and informed him of the various rights he was forfeiting by that decision. (1:22–25, 2:1–25, 3:1–25, 4:1–25). The court determined that the petitioner was waiving his right to a jury trial "freely, voluntarily, knowingly and intelligently," (4:22–25) and set the case for trial to the court on April 27, 1987.

In proceedings before the court on April 27th, petitioner's counsel informed the court "that we expect this matter to be disposed of without trial and ask that it be set for disposition without trial, preferably the second week of June in that counsel is intending to be out of town." (6:19–23). The court refused to allow the case to be continued for that length of time, and set the case for May 22, 1987.

Proceedings resumed on May 22nd with several pending motions at issue. Among the motions filed was a motion to disqualify the trial judge on the basis of judicial bias. It was alleged by the defense that an important state witness, Lincoln Police officer Todd Beam, was a roommate of the judge's son, and that such relationship might well influence the court in a manner adverse to the defendant. That motion was overruled after it was made clear that Officer Beam and Judge Fahrnbruch's son had ceased the apartment sharing on February 14, 1987.

Following disposition of this motion, petitioner's counsel then made an oral motion to the court to withdraw the petitioner's waiver of the right to a trial by jury and

reinstate the case to the jury trial docket. (15:17–21). Judge Fahrnbruch overruled motion, and noted that the motion was "merely a tactic to delay this matter," (15:24–25) and added that the case had been called for trial and received "numerous continuances for one reason or another." (16:1–2).

At this point in the proceedings, after the state appeared ready to call its first witness, defense counsel requested a bench conference at the request of the petitioner. The record indicates that petitioner was dissatisfied with defense counsel's performance due to the late filing of the motion to disqualify the trial judge and the fact that "the waiver of the jury trial wasn't what I wanted to do." (17:4–5). Defense counsel informed the court that it was "true that defendant waived jury at my specific urging at the time he do so...." (18:2–4).

The prosecution added that the waiver of the jury trial had offered some tactical advantage to the defendant because during the intervening period of time the defense was apparently trying to negotiate an inter-county plea agreement due to felony charges pending in other Nebraska counties. Petitioner's habeas petition filed herein also indicates that he waived jury trial, "[b]ased solely on counsel'[s] advice." (Filing # 2, p. 6). According to the petitioner, counsel "was working on a plea agreement and recommended petitioner waive jury trial as a stall tactic [sic] to complete plea negotiations." (Filing # 2, p. 6).

After further discussion, and continuing objections by the defendant to proceed with counsel and without a jury trial, the court reiterated that the jury trial request was merely a delay tactic, and stated that he viewed the attempt to discharge counsel as the same. (21:9–22). After a request by defense counsel to withdraw from his representation of the petitioner, and further oral argument, the court ultimately ordered defense counsel to proceed with the case, and trial was commenced. (29:15–22).

Trial to the court was not completed on May 22nd, and before commencement of the proceedings Judge Fahrnbruch suffered a minor heart attack which delayed resumption of the case. On June 4, 1987 defense counsel filed a motion for mistrial with the district court after being informed that Judge Fahrnbruch might well be unable to resume his duties for an indefinite period of time. A hearing on that motion was held June 15, 1987 before Judge Endacott of the Lancaster County District Court. The state offered no objections to the motion, which was granted by the court. The matter was then scheduled for July 27, 1987. At that hearing defense counsel again raised the issue of reinstatement of the case to the jury trial docket:

> Mr. O'Brien [Defense Counsel]: * * * There will, as I told the Court earlier, be a motion filed that the waiver of jury trial be rescinded and this matter be restored to the jury trial docket, but that will be a few days.
>
> The Court: Well, we'll take that up when it comes before us. * * *

(32:6–11).

Proceedings resumed in the case on July 27th, before Judge Endacott. At that time defense counsel made an oral motion to the court for an "order setting aside defendant's jury waiver which has previously been entered in proceedings ... before Judge Fahrnbruch and return this matter to the jury trial docket...." (36:7–10). Counsel supported the motion with the following argument:

> First, at the time that the jury trial waiver was executed by the defendant in Court, it was his belief that due to the state of matters in this case and in other cases pending in other courts in the state of Nebraska, that he was unprepared, his counsel was unprepared to go to trial at that time. As his counsel, I concurred in that determination and counseled that a jury trial waiver was appropriate for the reason that we needed more time for preparation. The defendant therefore waived jury trial on that basis.
>
> We have had sufficient time now to prepare for trial in this matter. We are prepared to go forward, but the defendant would like to exercise his right to

have a jury trial rather than have the matter tried to the Court. (36:12–24).

The court then received into evidence the bill of exceptions containing the proceedings before Judge Fahrnbruch, examined the defendant's prior statement of waiver and the court's examination of the defendant. Judge Endacott then found, based on that record, that the waiver had been entered knowingly, intelligently, voluntarily, and freely, and that there was no "good and sufficient cause or reason to grant the motion." (38:12–19). The trial then resumed.

In *United States v. Lee*, 539 F.2d 606 (6th Cir.1976), a defendant was originally charged in federal court with attempting to board an aircraft while carrying a dangerous concealed weapon in violation of 49 U.S.C. § 1472(1). The defendant signed a consent to proceed before a United States Magistrate which included a waiver of his right to a trial by jury in the district court. He was tried before and convicted by the Magistrate, after which he appealed to the district court. That court reversed the conviction based on a finding that the underlying statute required a showing of knowledge of the presence of the weapon, an element not found by the magistrate.

After remand the defendant moved to withdraw his earlier waiver in order to be retried before a jury presided over by the district court judge. The Magistrate denied the motion, and, upon retrial, again found the defendant guilty and pronounced the same sentence. The district court affirmed, and the defendant appealed.

On appeal, the circuit court reversed the conviction due to the lower court's refusal to allow the defendant to withdraw his consent to proceed before the Magistrate. The court stated:

We have found no precedent deciding the question whether a defendant's consent to trial before a magistrate continues in force after reversal by a reviewing court, but there are two related situations that may suggest the proper rule. The first is where a tribunal grants a new trial in the interest of justice without the inter-

vention of a reviewing court. In this situation, it appears appropriate to hold that waiver of a jury trial or consent to trial by a magistrate should continue in force. F.R.Crim.P. 33 and Magistrates Rule 7, which permit the tribunal to simply vacate the judgment and reopen the original proceedings in an appropriate case, may be construed to require this result. The second situation is when a reviewing court finds error in the conduct of a trial and reverses with directions for a new trial. In that situation the general rule is that a litigant is not bound by his prior waiver of a jury trial. * * * Unless the language of a waiver unambiguously states that it will apply in all retrials should they be ordered, a waiver should not continue in effect after the jurisdiction of the court to which it was tendered terminates upon the taking of an appeal.

539 F.2d at 608–9.

Noting that the "right to a jury trial is a fundamental right, and a waiver should not be presumed," the *Lee* court relied in large part on the Seventh Circuit's opinion in *Burnham v. N. Chicago St. Ry. Co.*, 88 F. 627, 629–30 (7th Cir.1898). The principal concern in both cases was that the party waiving the right to trial by jury in the first action generally did not anticipate retrial at that time, and, more importantly in the criminal setting, a defendant could "reasonably be expected to object to retrial without a jury before the same judge who had previously convicted him of the same offense." *Lee*, 539 F.2d at 609.

The court in *Lee* also noted that two other circuits had followed the general rule stated by *Burnham*. The Eighth Circuit, in a civil action brought by a receiver of the Independent Elevator Company against F.M. Davies, a corporation, cited *Burnham* in support of the following proposition:

It is claimed that, as the first trial was held to the court, a jury having been waived by stipulation in writing, it was error to grant plaintiff's motion to try the cause to a jury. The contention is without merit, as such a stipulation does not affect the right of either party to

demand a trial by jury, on a second trial, after the judgment in the first trial has been *reversed and remanded for a new trial.*

*F.M. Davies & Co. v. Porter,* 248 F. 397, 398 (8th Cir.1918) (Emphasis added). This brief discussion and disposition of that alleged error by the court at the second trial added little to the *Burnham* rule. The issue has, however, been more fully illuminated since the *F.M. Davies* opinion by other federal courts.

The Third Circuit, in *United States v. Lutz,* 420 F.2d 414 (3d Cir.), *cert. denied,* 398 U.S. 911, 90 S.Ct. 1709, 26 L.Ed.2d 73 (1970), reached a similar conclusion where a defendant in a criminal case charged with kidnapping waived a jury trial with the consent of the government, prior to his first trial, which ended in a mistrial. The mistrial in *Lutz* was declared, apparently during trial, as a result of an opinion issued by the United States Supreme Court in *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), wherein the death penalty provision of the Federal Kidnapping Act was declared unconstitutional due to its coercive effect on the exercise of the right to trial by jury.

Upon conviction after a second trial, the defendant appealed based in part on a claim that the district court had erred in requiring the defendant be tried to a jury when he wished to waive that right. At the second trial the prosecution refused to waive a jury trial as it had in the first trial. The *Lutz* court held:

> We agree with the trial court, and reject Lutz's contention, that the prosecution was not bound by its first waiver. The waiver referred to the earlier trial, before another judge. Once a mistrial was declared each party was free to assert or waive his rights.

*Lutz, supra* at 416.

Petitioner relies, in part, on *United States v. Mischlich,* 310 F.Supp. 669 (D.N.J.1970) in support of his claim. In *Mischlich* the defendant was charged with making a false representation of material fact in a matter involving the Small Business Administration. Although prosecuted in the District of New Jersey, there was some question as to whether the crime was actually consummated in Pennsylvania. At the completion of the government's presentation of evidence at the first trial, the defendant moved the court for an acquittal on one of the counts, a motion which the court denied. A lack of venue challenge was not one of the grounds raised in the defendant's motion. The court held that failure to raise such an objection amounted to a waiver of the venue claim. 310 F.Supp. at 672.

Following denial of his motion, the defendant began presentation of his evidence. At some point during the defendant's case, a mistrial was declared for reasons which the opinion declared were "not now material." *Id.* Prior to commencement of the second trial the defendant "assiduously pressed" the lack of venue claim. The effort to withdraw his earlier "waiver" by omission was unsuccessful, and the defendant was convicted by a jury.

On a motion for acquittal which was filed after conviction, the court characterized the question presented as whether the defendant's implied consent on the venue issue "foreclosed [him] from later effectively objecting to being tried for the same crime in the same district [upon mistrial]." *Id.* In reaching its decision to dismiss the court examined the effect of a declaration of mistrial.

> The declaration of a mistrial renders nugatory all trial proceedings with the same result as if there had been no trial at all. *See* C.J.S. Mistrial at 833–834 (1948). The situation which exists is analogous to that which results from an appellate reversal and remand for new trial. (Citations omitted). The parties are returned to their original positions and, at the new trial, can introduce new evidence and assert new defenses not raised at the first trial. (Citations omitted).

310 F.Supp. at 672. The court, in dismissing the defendant's conviction on one of the counts against him, held that "[t]he venue defense, although waived in the first trial

in the instant action, was properly raisable when the case was retried." *Id.* at 673.

The petitioner also cites *People v. Hamm*, 100 Mich.App. 429, 298 N.W.2d 896 (1980), a case which relied on many of the federal cases cited above to support of its holding that a waiver of the right to a jury trial in a first trial is not binding on a criminal defendant following appellate affirmance of a declaration of mistrial and remand for a second trial.

In *Hamm* the defendant was charged with first degree murder, and trial was had to the court following defendant's waiver of his right to trial by jury. During the trial the defendant was found incompetent to stand trial, and the trial court, *sua sponte,* declared a mistrial. That ruling was appealed to the Court of Appeals of Michigan and was affirmed in *People v. Hamm*, 79 Mich.App. 281, 261 N.W.2d 288 (1977).

The defendant was thereafter found to be competent to stand trial, and a second trial was commenced. The prosecution made a motion to disqualify the trial judge, which was denied, and the defendant filed a demand for a jury trial which was also denied. Trial proceeded and the defendant was found guilty of first degree murder.

On appeal the defendant alleged that he was denied his Sixth Amendment right to a trial by jury. The court here was faced with a question of first impression: "does the declaration of a mistrial nullify a prior waiver of trial by jury, and, thus, restore the option of jury or bench trial in the subsequent retrial?" 298 N.W.2d at 897. The Michigan court examined *Burnham, Lee, Lutz,* and *Mischlich,* and concluded that *Lutz* and *Mischlich* were the factually relevant cases and thus controlled the outcome of the case before it. The court held:

> When [the defendant] initially waived his right to a trial by jury, that waiver only had relation to the first trial. There

could be no presumption at the time of the waiver that there would ever be a second trial. When this Court affirmed the trial judge's declaration of mistrial and remanded for a second trial, the parties were returned to their original positions, and defendant's original waiver of a jury trial was nullified. To decide otherwise would require us to read the original jury waiver as applying in all retrials, should they be ordered. This we decline to do.

298 N.W.2d at 899.

In this case the respondent relies principally upon the *Lee* case, and specifically argues that the facts of this case fall within the first set of circumstances described by the court, i.e., that this petitioner sought a withdrawal of a waiver in a case where a second trial was ordered without appellate intervention, and thus the waiver would "continue in force." *Lee, supra* at 608. Therefore, respondent argues, the declaration of mistrial by Judge Endacott in this case did not nullify the petitioner's prior waiver of the right to a trial by jury which was found to be voluntary by both judges involved in the case.

The petitioner argues, on the other hand, that cases falling within the first category described by *Lee* are not analogous to this case because the *Lee* court was referring to cases wherein a defendant's motion for a *new trial* was granted and the final judgment was vacated by the convicting court, while in this case no final judgment was ever entered and a *mistrial* was declared.[1] While this may be a valid distinction between *Lee* and this case, the petitioner does not offer an explanation of the importance of this distinction. While the range of circumstances under which a new trial might be granted may be broader than that resulting in the declaration of a mistrial, the end result is identical. In either case the defendant receives a new trial.[2]

---

1. There is no dispute that this case does not fall within the second category of cases in that there was no appellate intervention prior to the second trial.

2. The only distinction between these two sets of circumstances is that in the case of a new trial

motion, the deliberative process had been completed and judgment entered at the time the motion was filed. In the case of a mistrial, at least in this case and the cases cited herein, no determination of guilt had been rendered and a mistrial was declared prior to any entry of judgment. The significance of that distinction, how-

I agree with the petitioner that the *Lee* case is not factually on all fours with cases involving mistrials. The court in *Lee* was not presented with a scenario involving a declared mistrial and subsequent second trial, and indeed the court's discussion regarding the effect of a grant of a new trial without appellate intervention is arguably dicta in that the facts of *Lee* involved an appeal and remand from the district judge to the magistrate.

I also question the vitality of the *Lee* opinion in light of the Sixth Circuit's subsequent attempt to distinguish that case in *United States v. Groth,* 682 F.2d 578 (6th Cir.1982). In *Groth* a defendant in a drug prosecution waived his right to a trial by jury in his first trial. In a bench trial before the district court judge, based on evidence adduced and certain stipulated facts, the defendant was found guilty. On a subsequent motion for a new trial, the district court judge found that the defendant had not fully consented to the stipulated facts upon which his conviction rested, and the motion was granted.

Prior to the commencement of the second trial, the defendant sought to withdraw his earlier waiver of the right to a jury trial, and to voir dire the district court judge as to possible bias resulting from knowledge of facts from the first trial. Both motions were denied. On appeal the defendant al-leged that he had been denied his Sixth Amendment right to a trial by jury in the second proceeding. The Sixth Circuit agreed, and reversed the conviction.

On appeal the circuit court held that the *Lee* decision did not directly control the case before it "since it does not involve the relationship between a magistrate and the District Judge, nor is it controlled by Rule 33, Federal Rules of Criminal Procedure, ... [because that rule makes] no reference therein to a motion to withdraw a waiver of jury trial before commencement of a second trial." *Groth,* 682 F.2d at 579–80.

Interestingly, the facts presented in *Groth* seemed to fit neatly into the first category of cases discussed by *Lee,* given that there appeared to have been a motion for a new trial which was granted by the trial judge, an order of a new trial and no appellate intervention. Nonetheless, the *Groth* panel drew the precise distinction that the case before it "did not involve the relationship between a magistrate and the District Judge," and noted as well that Rule 33 makes "no reference ... to a motion to withdraw a waiver of jury trial before commencement of a second trial." 682 F.2d at 579–80.[3]

Based on this narrow distinction, the court held that the "case closest to our facts" is *Lee,* which established that "once a mistrial was declared each party was free

---

ever, would tend to weigh against this petitioner's argument. The *Lee* and *Burnham* courts, in discussing retrials after reversal and remand, were concerned with potential of or appearance of judicial bias on the part of the original trial judge who had originally adjudicated the guilt of the defendant. Arguably the same bias claim could be asserted by a defendant who had been granted a new trial, where a final judgment of guilt had been entered. This is especially true in a case where the grounds for the new trial was a technical rules violation rather than an evidentiary issue that would leave the guilt determination in doubt.

In the case of a mistrial, however, such a potentially prejudicial judgment has never been reached by the court. Thus the judicial bias concern, which in part prompted the court in *Lee* to allow withdrawal of waiver after reversal and remand for new trial of a conviction, is far *less* likely to be present than in the case of the granting of a new trial by the original trial judge. Thus, if the *Lee* court was unwilling to grant a defendant the right to withdraw a waiver in the case of the grant of a new trial, such a result would certainly not be warranted in the case of a mistrial.

3. I note that the *Groth* opinion was written by Chief Judge George Clifford Edwards, Jr., the same judge who concurred in the *Lee* opinion because he did not agree that "the rules and case law cited by the majority [were] controlling of the result arrived at." Judge Edwards believed that the defendant should have been allowed to withdraw his consent to proceed before the magistrate and waiver of the right to a trial by jury because the printed waiver form made no mention of whether that waiver would be binding in "any new trial of the same proceeding."

That concurrence was relied upon in *Groth* as support for the proposition that "waiver of a jury trial does not bar demand for a jury on retrial of the same case unless the original waiver explicitly covers this contingency." *Groth,* 682 F.2d at 580.

to assert or waive his rights." *Id.* at 580. Noting that the concurrence in *Lee* was particularly concerned with the absence of any reference in the waiver form to the effect of the waiver in the event of retrial, the *Groth* court held:

> We conclude as to this issue that waiver of a jury trial does not bar a demand for a jury on retrial of the same case *unless the original waiver explicitly covers this contingency.*

*Id.*

It appears then that the Sixth Circuit, at least in *Groth,* strictly limited the *Lee* holding to its specific facts. In addition, it seems that the recognition in the *Groth* opinion that Rule 33 fails to mention withdrawals of waivers of the right to jury trials, *Id.* at 580, is an implicit criticism of the analysis employed in *Lee* as to the first category of cases where new trials are granted without a reviewing court's intervention. While *Lee* continues to be cited as authority for the above noted rules established therein, *see infra, United States v. Mortensen,* 860 F.2d 948 (9th Cir.1988), the weight of its authority must at least be questioned given its treatment in *Groth.*

Undoubtedly the *Lutz, Mischlich,* and *Hamm* opinions are closer to the facts of this case. Those cases dealt with the withdrawal of waivers after *mistrials* rather than new trials. The cases stand for the proposition that once a mistrial was declared the parties stand in the position they were in prior to the first trial, and "are free to assert or waive [their] rights." *Lutz,* 420 F.2d at 416. Indeed, the *Mischlich* court analogized a mistrial situation to an "appellate reversal and remand for new trial," 310 F.Supp. at 672, which arguably would bring such cases within the second category of cases set forth in *Lee,* and allow for withdrawal of any prior waivers.

This case is not one where a conviction was reversed and remanded for a new trial, such as in *Lee, F.M. Davies,* or *Burnham,* where there may be a concern over the convicting judge retrying the same defendant on the same charge. This case is also distinguishable from *Lutz* in that there the defendant was attempting to argue that he had a right not to be tried by a jury despite the objection of the prosecution in the second trial.[4]

Nor can petitioner argue, as he appears to imply in his brief, that he was "perfectly willing for a particular judge to try him, when he would not risk his successor...." *Lee, supra,* at 609, *citing, Burnham, supra* at 629–30 (*quoting, Cross v. State,* 78 Ala. 430 (1885)). The record in this case indicates that the petitioner, after his original waiver, attempted to withdraw the waiver both before his first trial by Judge Fahrnbruch and after the mistrial. There is no indication whatsoever that he preferred to be tried before Judge Fahrnbruch, nor that his reason for the attempted withdrawal after mistrial was to avoid trial because the presiding judge was Judge Endacott. The record simply belies such an assertion.

Along those same lines, I am not convinced that a criminal defendant, upon waiver of the right to a trial by jury, has a constitutional right to be tried before a *particular* judge in the absence of a showing that trial judge to which the case will be tried is tainted by bias. I need not, however, decide that question because this case, as noted immediately above, does not raise such circumstances.

As noted by the petitioner, the *Mischlich* and *Hamm* cases appear to establish a *per se* rule that after declaration of a mistrial, a defendant is free to withdraw any waivers entered in the first trial and reassert any rights in the second proceeding. If in fact such a result was intended by those courts, I have reservations about the adoption of such a rule. Allowing a litigant, whether it be a criminal defendant, state prosecutors, or civil litigants, to reopen every issue previously disposed of by the first trial court would indeed stretch judicial resources well past the point of operability. While relitigation of some issues may be

---

**4.** Many courts have cited *Singer v. United States,* 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) for the proposition that a defendant does not have a constitutional right to be tried by the court rather than a jury. 37 A.L.R.4th 304, 308 (1985).

necessitated by appellate reversal, for instance, such reversal could not logically demand in every case that the action return to the point were a criminal or civil complaint is filed.

Neither *Mischlich* nor *Hamm* addressed the question of how far back the parties are "returned" in the previous progression of a case when a mistrial is declared. At least one court has explored similar concerns about the viability in a second trial of dispositive rulings from the first trial after a declaration of mistrial. In *City of Cleveland v. Cleveland Electric Illuminating Co.*, 538 F.Supp. 1328 (N.D.Ohio 1981), the district court considered such concerns and analyzed the question in light of the *Mischlich* holding.

*Cleveland Electric* involved an antitrust suit brought by the city against an electric utility. Following an eleven-week trial, a mistrial was declared after the jury was unable to reach a verdict. The jury was dismissed and a second trial was scheduled. Prior to the second trial the defendant utility filed a motion seeking an order of the court "to recognize as binding during the impending retrial some twenty-one ... [o]rders issued by the Court during or immediately prior to the initial trial...." 538 F.Supp. at 1329.

The court first noted:

[C]omparatively little authority exists, in both reported cases or learned treatises, upon the status at a retrial of those issues which were the subject of dispositive rulings by the court at the original trial and which therefore were not in issue at the time the case was submitted to the original jury. There is, however, no dispute either among the authorities or between the instant parties, that all issues actually submitted to the jury at the previous trial may be retried *de novo*. Further, *it is uniformly agreed that a mistrial does not affect or invalidate any of the pretrial proceedings in the case.* Therefore, the precise concern

of this Court is with the viability at the retrial of certain authoritative dispositions propounded during the preceding trial of this action.

538 F.Supp. at 1329–30.[5] The *Cleveland Electric* court relied in part on *Remco, Inc. v. Faber Brothers, Inc.*, 34 F.R.D. 259 (N.D.Ill.1964), wherein the plaintiff attempted, following declaration of a mistrial, to relitigate a Sherman Act count against the defendant after that issue had been dismissed for insufficiency of evidence. The court noted:

The opinion in *Remco* recognizes that the fundamental purpose of a retrial is to afford a new jury an opportunity to reach a final disposition of only those issues which were left unresolved by the failure of the first jury to agree up a verdict. That is to say, a mistrial occasioned by the jury's inability to arrive at a verdict does not convert those matters which were previously the subject of dispositive rulings by the trial court to matters the litigants are free to relitigate *de novo* in the second trial.

538 F.Supp. at 1330–31.

The court then addressed the City's primary argument that the *Mischlich* case was contrary to rule in *Remco*. After quoting the language of *Mischlich* relied upon by the petitioner herein, and quoted above, the *Cleveland Electric* court held:

It is apparent from the foregoing that *Mischlich* does not address itself to instances where issues were actually raised and specifically resolved by the trial court in the course of the initial trial. That is to say, *Mischlich* does not support the plaintiff's assertion that the right created by a mistrial to "introduce new evidence" or "assert new defenses" [*Mischlich*, 310 F.Supp. at 672] attaches to those issues which were the subject of dispositive rulings by the trial court during the course of the first trial. To construe *Mischlich* in the expansive manner

---

5. Although the court's "dispositions" of pretrial motions may differ in kind from a criminal defendant's waiver of jury trial or other constitutional rights, both are categories of issues that must be "resolved" in order to decide a case, and a subsequent mistrial declaration on unrelated grounds does not cast doubt on the soundness of these prior "dispositions;" be they by waivers or decisions of the court.

proposed by the City would, *inter alia,* ignore the established principle that a disposition entered in the form of a directed verdict pursuant to Fed.R.Civ.P. 50(a) "is necessarily a disposition with prejudice." 5A Moore's Federal Practice ¶ 50.03[1] at p. 50–42 (2d ed. 1980). *Mischlich* then, fairly viewed, merely supports the rule that, as to those issues left unresolved in the first trial, parties at retrial are not limited by the evidence previously adduced or the tactics formerly employed in the earlier proceeding.

The Court finds entirely unpersuasive the City's contention that adherence to the principles espoused in *Mischlich* requires that the retrial of this case proceed entirely unencumbered by the dispositive rulings heretofore rendered by the Court during the course of the first trial. The Court finds similarly unpersuasive the plaintiff's assertion that the law-of-the-case doctrine is solely a principle of appellate review which has no application to the legal rulings issued by a trial court. As articulated by Professor Moore in his commentary on the law of the case:

> [T]he federal doctrine of the law of the case applies to principles of law enunciated by the trial court and by the appellate courts. When, therefore, a federal court enunciates a rule of law to be applied in the case at bar it not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but, as a general proposition, it establishes the law, * * * which it itself will, normally apply to the same issues in subsequent proceedings in that case. 1B Moore's Federal Practice ¶ 0.404[1] at pp. 402–03 (2d edition 1980) (Footnote omitted).

*Cleveland Electric,* 538 F.Supp. at 1331–32 (1980).

The question raised in the *Cleveland Electric* case is not identical to that presented herein. The case does, however, illustrate the potential for abuse if *Mischlich* is read so broadly as creating a *per se* rule that *all* prior proceedings are rendered "nugatory" or "nullified" by the granting of a mistrial. While the point may not be

dispositive of the question, it is important to recognize that the quoted language from *Mischlich* states that *"trial* proceedings" are rendered "nugatory" as if there had been "no *trial* at all." *Mischlich,* 310 F.Supp. at 672 (emphasis added). It was in fact during the course of the *Mischlich* trial, at the close of the government's case, that the venue "waiver" was held to have occurred when the defendant moved for a judgment of acquittal and failed to raise that as a ground therefor. 310 F.Supp. at 672. It would extend *Mischlich* too far to conclude from that case that all pretrial issues disposed of since the filing of a complaint, including those unrelated to the reason for the mistrial, were nullified upon the declaration of mistrial.

To the extent that the *Hamm* opinion is relevant as precedent in this court, I note that the court in that case relied principally upon the *Mischlich* to support of its holding. The *Cleveland Electric* case was not in existence at the time, and thus the court in *Hamm* did not consider the "law of the case" limitation of the *Mischlich* rule as analyzed by *Cleveland Electric.*

Arguably the *Cleveland* case may have had no effect on the *Hamm* court's holding. While the question presented in *Hamm* was nearly identical to that raised by the petitioner herein, the facts of that case may have required the result. The defendant in *Hamm* was found during trial to be incompetent to stand trial, certainly a factor to be considered by the appellate court on his competency to waive a constitutional right in the first trial. The second trial was apparently over three years after the first trial, and subsequent to his being adjudged competent to proceed. The appellate court may have been concerned, and rightfully so, about the validity of a waiver made by a defendant whose mental state required the declaration of a mistrial, and over three years prior to the commencement of a second trial.

Certainly the "law-of-the-case doctrine" as applied in *Cleveland Electric* is not without its own logical limitations. The Sixth Circuit Court of Appeals discussed the needed flexibility of that doctrine in

*U.S. v. Todd*, 920 F.2d 399 (6th Cir.1990). In that case the circuit court held that *evidentiary* rulings in a defendant's first trial were not binding, after mistrial, in a second trial before the same court. The court of appeals first noted that among coordinate courts the doctrine does not forbid reconsideration of previously-decided issues, because the doctrine is merely a "discretionary tool available to a court in order to promote judicial efficiency." 920 F.2d at 403. Secondly, the court reasoned that the nature of the decisions at issue—an evidentiary ruling made during trial—"mandates giving the transferee court broad discretion in [such] matter[s]." Such discretion is necessary because "this type of decision turns upon the evidence as developed during the course of a trial" rather than what may have taken place in the first trial. *Id.*

While recognizing the discretionary nature of the law-of-the-case doctrine, the *Todd* court cited with approval the result reached in *Cleveland Electric, supra.* The Court noted:

> [T]he law-of-the-case doctrine can be applied to rulings made in a case that ends in a mistrial. [*Cleveland Electric, supra* at 1330]. Otherwise, a court would be required to rule *de novo* on every issue previously decided in a prior proceeding that ends in a mistrial. (Citations omitted). This would be inefficient, particularly when the previous trial had progressed considerably. In such a situation the law-of-the-case doctrine would prove useful. A court may recognize and enforce prior rulings based on this doctrine, but also retains the power to reconsider previously decided issues as they arise in the context of a new trial.

920 F.2d at 404.

Despite my hesitance to accept a *per se* rule allowing excessive relitigation of issues subsequent to a declaration of a mistrial, I am not unmindful of the potential injustice of a rule that never allows a defendant to withdraw a waiver of a constitutional right once those words are uttered. That concern was expressed in *United States v. Mortensen*, 860 F.2d 948 (9th Cir.1988), where the circuit court discussed the attempted withdrawal of a consent to proceed before a federal magistrate judge, rather than an Article III district court judge, in a tax evasion prosecution. In that case the defendant consented to trial before the magistrate, although in *Mortensen* the trial was to a jury. The defendant's first trial ended in a mistrial after the jury was unable to reach a unanimous verdict. The retrial was scheduled, and on the morning of that second trial the defendant moved to withdraw his consent to proceed before magistrate. The motion was denied by the district court judge, and the second trial resulted in the defendant's conviction.

On appeal, the defendant argued that the mistrial "ended the vitality of his consent to trial before the magistrate." *Id.* at 950. The Ninth Circuit noted the two categories of cases established in *Lee,* and read *Lee* as developing the rule that "so long as the jurisdiction of the trial court is not broken by the taking of an appeal, the consent continues through subsequent proceedings." *Id.*

The court, although finding the *Lee* rule "reasonable," modified the rule to the extent that it believed such waivers of constitutional rights should not, "once uttered, be forever binding." *Id.* Analogizing the right to be tried before an Article III judge, involving "important constitutional rights," to the right to withdraw waivers of the right to counsel, *United States v. Kennard*, 799 F.2d 556 (9th Cir.1986), and the right to withdraw a waiver of a jury trial before retrial of the same case, *Groth, supra,* the *Mortensen* court held:

> The continuity of consent, however, is only a presumption. Although jurisdiction might remain unbroken, consent can be withdrawn by the defendant *if done in a timely manner.*

860 F.2d at 950. (Emphasis added). Thus the court established:

> [C]onsent to trial before the magistrate is not automatically canceled by a mistrial but continues in force until it is revoked or withdrawn in a timely fashion.

*Id.* In the case before it, the circuit court determined that the defendant's motion

was untimely in that he had waited until the morning of retrial to attempt to withdraw the consent, while having shown every indication between the two trials that he intended to proceed as he had before. *Id.* at 951. The court explained its holding as follows:

> Mortensen's motion to withdraw clearly failed to satisfy the timeliness requirement. He waited until the morning on which the retrial was scheduled to begin, with a jury panel called and waiting in the courthouse. Behavior of this sort seems intentionally calculated to cause delay and interference. Prior to the retrial date, Mortensen gave every indication that he anticipated retrial before the magistrate. Mortensen allowed without objection the scheduling of a new hearing before the magistrate; he set a date for the submission of pretrial motions to the magistrate; he submitted a material witness warrant that explicitly referred to retrial before the magistrate; he filed with the magistrate a motion to dismiss that did not express a change in his consent status; he sought and received a continuance from the magistrate. These actions demonstrate that Mortensen continued to consent to trial before the magistrate up to the very morning the trial was to begin. In light of these factors, we conclude that Mortensen's withdrawal motion was untimely and therefore properly denied.

860 F.2d at 951.

In this case it is admitted that the principal reason for the original waiver of the jury trial was to avoid going to trial at all on April 10, 1987. Counsel made it clear at the hearing immediately preceding the second trial that the waiver was due to the lack of preparedness for trial, and was a tactic to gain time to negotiate a plea or become better prepared. The petitioner's statements to the court indicate that he agreed with the tactic, but later had hopes of withdrawing the waiver if the case went to trial.

The record also indicates that even after the mistrial defense counsel waited until the morning of trial to make an oral motion to withdraw the jury waiver entered in the first trial.[6] No explanation appears for the delay, and undoubtedly granting such a motion at that time would have occasioned yet another delay in the disposition of the petitioner's case.

Despite petitioner's argument to the contrary, I conclude that the better rule on the facts of this case is found *Cleveland Electric* and *Mortensen*. The record here reveals that the petitioner's original waiver was intended to delay the proceedings against him, and subsequent motions could be viewed with similar intent in that they consistently were made when trial was about to begin. It seems that the mistrial in this instance simply offered the petitioner an unexpected opportunity to attempt again, before another judge, to withdraw a waiver which was entered for tactical reasons in his first trial.

My conclusion might be considerably different had the petitioner's motion been timely filed prior to the second trial. In this case petitioner had nearly one and one-half months, from June 15 to July 27, to address this issue before the second trial. While a waiver of a constitutional right may not be forever binding on a criminal defendant, the withdrawal of such a waiver should not be allowed where it interferes with the orderly operation of the court, and particularly where there was no indication of a valid reason for such delay. As the *Mortensen* court stated, while "[t]imeliness is not a concept subject to precise quantification, ... a withdrawal motion is timely when granting the motion would not unduly interfere with or delay the proceedings." 860 F.2d at 950 (Citations omitted).

I am cognizant of the principle that "the right of a jury trial in cases at law, whether in a civil or criminal case, is a high and sacred constitutional right in Anglo–Saxon jurisprudence," and that a "stipulation for waiver of such right should therefore be strictly construed in favor of preservation

---

6. This, despite counsel's statement to the court on June 15, 1987, at the hearing on the motion for mistrial, that he intended to file such a motion within a "few days."

of the right." *Burnham*, 88 F. at 629. I do not, however, conclude that the Sixth Amendment requires courts to allow criminal defendants to alternate between waivers and withdrawals in the same proceeding simply to suit their schedule or for a tactical advantage. A *per se* rule allowing withdrawals of waivers following every mistrial, and under any circumstances, would also encourage tactical maneuverings such as defendants intentionally causing mistrials if a proceeding was progressing unfavorably to the defense.

The petitioner herein does not challenge the voluntary nature of his waiver; he merely asserts that it was his counsel's recommendation that he waive the right in order to gain more preparation time. While one might question the tactical wisdom of such as decision, I cannot conclude that the trial court denied petitioner any Sixth Amendment right to be tried to a jury.

IT THEREFORE HEREBY IS RECOMMENDED, pursuant to 28 U.S.C. § 636(b)(1)(B), that the petition for writ of habeas corpus be denied.

The petitioner is hereby notified that unless objection is made within ten days after being served with a copy of this recommendation, he may be held to have waived any right he may have to appeal the court's order adopting this recommendation.

Dated May 23, 1991.