OPINION
Defendant-appellant, Alphonso West, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of aggravated robbery in violation of R.C.2911.01 with a firearm specification, and one count of robbery in violation of R.C. 2911.02.
By indictment filed January 30, 1998, defendant was charged with two counts of aggravated robbery with a firearm specification, two counts of robbery, one count of aggravated burglary, and one count of burglary. As a result of a jury trial, defendant was found guilty of one count of aggravated robbery with specification, and one count of robbery. The trial court sentenced defendant, merging the robbery conviction into the aggravated robbery conviction.
Defendant timely appeals, assigning the following errors:
 I. THE DEFENDANT'S RIGHT TO A FAIR TRIAL WAS VIOLATED BY THE COURT STATING TO THE JURY DURING VOIR DIRE THAT THE DEFENDANT WAS REPRESENTED BY A PUBLIC DEFENDER.
 II. THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW WAS VIOLATED BECAUSE THE CONVICTION FOR THE FIREARM SPECIFICATION WAS BASED ON INSUFFICIENT EVIDENCE AS TO THE OPERABILITY OF THE FIREARM.
 III. THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 IV. THE DEFENDANT'S RIGHT TO DUE PROCESS WAS VIOLATED BY THE PROSECUTOR'S IMPROPER COMMENTS DURING CLOSING ARGUMENTS.
 V. THE DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant's first assignment of error asserts the trial court erred in stating during voir dire that defendant was represented by an attorney from the Franklin County Public Defender's Office.
At the beginning of voir dire, the trial court began to introduce the people the jury would be seeing in the courtroom. After introducing the prosecutor, the trial court introduced the defense attorney as being from the Franklin County Public Defender's Office. According to defendant, that comment elicited an off-the-record objection.
Later during voir dire, the trial court again introduced defendant's attorney as being from the Franklin County Defender's Office. Although no objection was raised at the time, at the beginning of the trial on the next day defense counsel objected on-the-record to the trial court's introducing her as being from the public defender's office. She requested a mistrial, but the trial court denied the request. On appeal, defendant contends the introductions, while true, prejudiced defendant by suggesting to the jury that defendant was poor, that no one cared about defendant and that the jury members had a pecuniary interest in the case.
The decision to grant or deny a motion for a mistrial rests within the sound discretion of the trial court, and the trial court's decision will not be disturbed on appeal absent an abuse of that discretion. State v. Sage (1986), 31 Ohio St.3d 173,182, citing State v. Williams (1975), 43 Ohio St.2d 88, and Statev. Long (1978), 53 Ohio St.2d 91. An abuse of discretion implies that the court's decision was unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157.
In determining whether the trial court's comments were prejudicial to defendant, (1) defendant has the burden to demonstrate prejudice, (2) the trial judge is presumed to be in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, and (4) consideration is to be given to their possible effect upon the jury, and to their possible impairment of the effectiveness of counsel. State v. Wade (1978), 53 Ohio St.2d 182,188, vacated and remanded on other grounds (1978), 438 U.S. 911; see, also, State v. McQueen (1997), 124 Ohio App.3d 444, 449-450
(applying Wade in finding trial court's comments during trial prejudiced defendant and denied him a fair trial).
The transcript of the voir dire reveals that the trial court introduced defendant's counsel as being from the public defender's office only to determine whether any potential jurors had any affiliation or connection with personnel from that office. Questioning of that nature is proper in order to determine the impartiality of the potential juror. Indeed, the court would be hard-pressed to inquire in any other way about the juror's knowledge of people associated with the public defender's office.
Under similar circumstances, the court in State v. Pump
(June 20, 1994), Ross App. No. 93CA1968, unreported, found no abuse of discretion in the trial court's denying a motion for a mistrial when the prosecution stated in voir dire that defense counsel was from the public defender's office. The court noted that the prosecution "merely sought to question the members of the venire regarding their possible connections with attorneys or their associates involved with the case. The reference to the Public Defender's Office was merely an all-inclusive term such as one would use to refer to all of the members of any law firm." Id.
Moreover, defendant has not demonstrated any prejudice that resulted from the statements the trial court made. While defendant suggests he was prejudiced in many ways, his arguments resolve to mere speculation. Accordingly, defendant's first assignment of error is overruled.
Defendant's second assignment of error contends the operability of the firearm involved is not supported by sufficient evidence. Because defendant challenges his conviction as not supported by sufficient evidence, we construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find the essential elements of the firearm specification were proved beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259; State v. Conley
(Dec. 16, 1993), Franklin App. No. 93AP-387, unreported (1993 Opinions 5437).
Pursuant to R.C. 2929.14(D)(1)(a)(i), an individual who is convicted of a specification charging him with having a firearm on or about his person or under his control while committing a felony is subject to a mandatory three years of actual incarceration. See R.C. 2941.145. A firearm is defined as "* * * any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1).
The prosecution bears the burden of proving the firearm was operable or could have been rendered operable at the time of the offense. Such proof may be established beyond a reasonable doubt by the testimony of lay witnesses who observed the weaponand by the circumstances of the incident. State v. Murphy (1990),49 Ohio St.3d 206, syllabus. In determining the operability of a firearm, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which includes any implicit threat made by the individual in control of the firearm. State v.Thompkins (1997), 78 Ohio St.3d 380, paragraph one of the syllabus; see, also, R.C. 2923.11(B)(2) (" * * * the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm").
The victim of the robbery, Patty Brown, testified that at the time of the robbery, she was working alone at Lincoln Park Cleaners. The morning of the robbery, as was customary at the store, Brown's manager brought her money for the day: two hundred dollars in rolled quarters, fifteen ones, and four fives. Minutes after her manager left, Brown testified that she "looked up again and there was a guy standing at the counter. And he had a gun and had it pointed at me and told me to give him all the money and he wouldn't hurt me much." (Tr. 134.) Brown gave him the money and the man then left the store. Although Brown had a chance to look at the gun, she was not familiar with guns and could testify only that the gun "looked like — it was all in the palm of his hand and was — looked black looking." (Tr. 137.) The gun was pointed somewhere between Brown's chin and chest.
Construing Brown's testimony in the light most favorable to the prosecution and considering the totality of the circumstances, her testimony is sufficient to allow a rational trier of fact to find that the firearm in question was operable, as defendant pointed a gun at Brown and threatened harm to her if she did not do as he said. Murphy, supra, (finding sufficient evidence where the victim of a robbery testified the defendant took a gun out of his pants, pointed it at the victim while he waived it back and forth and then told the victim that if she did not give him the money, he would kill her); Thomkins, supra,
(finding sufficient evidence of operability of a firearm when the defendant pointed a gun at the victim and told her that he was committing a holdup and to be "quick, quick"). Because defendant's implicit threat is sufficient to prove that defendant's gun was operable or capable of being rendered operable at the time of the offense, defendant's second assignment of error is overruled.
Defendant's third assignment of error asserts defendant was denied effective assistance of counsel due to trial counsel's failure to refile motions to suppress or to adequately prepare for trial.
In order to prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged standard outlined in Strickland v. Washington (1984), 466 U.S. 668. Initially, defendant must demonstrate counsel's performance was deficient, and counsel's errors were "so serious that counsel was not functioning as the `counsel' guaranteed by theSixth Amendment." Id. at 687. In essence, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. Next, a defendant must demonstrate prejudice by counsel's errors, showing that the "errors were so serious as to deprive [defendant] of a fair trial, a trial whose result is reliable." Id. at 687. To meet this requirement, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."Id. at 694.
On March 11, 1998, defense counsel filed motions to suppress a photo identification Brown made, evidence obtained during the search of defendant, and statements defendant made. Subsequently, on April 15, 1998, counsel filed another motion to suppress evidence obtained while searching defendant's apartment. Similarly, on April 27, 1998, counsel filed yet another motion to suppress Brown's photo identification. Apparently following a hearing held prior to the first trial in this matter, the trial court denied defendant's motion to suppress the photo identification, and defendant withdrew the other motions to suppress. The first trial ended in a mistrial. Defendant's counsel did not refile the withdrawn motions before defendant's second trial. Defendant contends counsel's failure to refile or renew the motions was ineffective assistance of counsel.
Although the Sixth Amendment guarantees the assistance of counsel, it does not require defense counsel to file or pursue a motion to suppress in every case. State v. Justice (Dec. 24, 1996), Franklin App. No. 96APA05-616, unreported (1996 Opinions 5015). Counsel is not ineffective for failing to raise a claim that is not meritorious. State v. Ratcliff (1994), 95 Ohio App.3d 199,206. When no meaningful evidence supports an argument in support of a motion to suppress, failure to file a motion to suppress does not constitute ineffective assistance of counsel.State v. Flors (1987), 38 Ohio App.3d 133; State v. Gibson
(1980), 69 Ohio App.2d 91, 95 (noting that "[w]here the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion"). However, the failure to file a motion to suppress which possibly could have been granted and which implicated matters critical to the defense can constitute ineffective assistance of counsel, if such failure prejudices the defendant. State v.Freeman (Dec. 12, 1995), Franklin App. No. 95APA03-321, unreported (1995 Opinions 5203) (citing State v. Garrett [1991], 76 Ohio App.3d 57,63).
Defendant's motion to suppress the photo identification was apparently denied by the trial court before the first trial. Counsel's failure to refile that motion is not ineffective assistance of counsel, as the ruling from the first trial carried over to the second trial. State v. Harris (May 11, 1984), Lucas App. No. L-83-233, unreported (holding that "[w]hen a mistrial is granted the defendant is only entitled to a new trial. The mistrial had no effect on the prior motion to suppress. The appellant was not entitled to refile the motion to suppress");Cleveland v. Smith (Apr. 2, 1992), Cuyahoga App. No. 60348, unreported; see, also, United States v. Todd (C.A.6, 1990),920 F.2d 399; City of Cleveland v. The Cleveland Electric IlluminatingCo. (N.D.Ohio 1981), 538 F. Supp. 1328. Moreover, defendant presented no new evidence that would have warranted a change in the trial court's initial decision; thus refiling that motion would have been a futile act. See State v. Martin (1983),20 Ohio App.3d 172, 174 (finding no ineffective assistance of counsel when defense counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act).
Further, refiling the other motions to suppress is not ineffective assistance of counsel. While defendant contends that counsel should have refiled the motions "even if it is not clear the motion would be granted," (Brief of Defendant-Appellant, pp. 12-13) defendant's contention is insufficient to support his claim of ineffective assistance of counsel. Rather, to demonstrate ineffective assistance of counsel in the failure to refile the motions, defendant must show some meaningful evidence on the record that would support the granting of said motion. Flors,supra. Because defendant has failed to do so, the failure of counsel to renew or file defendant's motions to suppress does not constitute ineffective assistance of counsel on this record. To the extent defendant seeks to support his claim with evidence outside the record, his proper avenue of relief is post-conviction relief. R.C. 2953.21.
Defendant also alleges trial counsel was ineffective in failing to properly and adequately prepare for trial. Defendant's argument is premised solely on counsel's failure to renew defendant's motion to suppress the photo identification. As noted above, however, the record does not support defendant's contention that counsel was ineffective in failing to renew that motion.
Accordingly, defendant's third assignment of error is overruled.
Defendant's fourth assignment of error contends the prosecution's improper remarks during closing arguments violated defendant's due process rights. Considerable latitude is permitted in closing argument. State v. Mauer (1984), 15 Ohio St.3d 239,269. The prosecution, however, must avoid insinuations and assertions which are calculated to mislead the jury. Berger v.United States (1935), 295 U.S. 78, 120. Nor may the prosecution express a personal belief or opinion on the credibility of a witness or the guilt of the accused. State v. Thayer (1931),124 Ohio St. 1.
The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.State v. Smith (1984), 14 Ohio St.3d 13, 14; State v. Lott
(1990), 51 Ohio St.3d 160, 165. The closing argument is considered in its entirety to determine whether it was prejudicial. State v.Moritz (1980), 63 Ohio St.2d 150, 157. Moreover, to the extent defendant did not object to allegedly improper statements, all error is waived but for plain error. State v. Slagle (1992),65 Ohio St.3d 597, 604; Whitehall v. Carter (Dec. 1, 1998), Franklin App. No. 98AP-167, unreported (1998 Opinions 5237). Plain error is established when, but for the error, the outcome of the trial clearly would have been otherwise. State v. Long, supra, paragraph two of the syllabus.
In support of his assigned error, defendant first cites the prosecution's statement that Brown was one hundred percent sure when she picked defendant out of the photo array on the night of the robbery. Defendant contends Brown never so testified. Defendant, who did not object to the statement, suffered no prejudice: even if Brown did not so testify, Detective Scott, who showed Brown the pictures, testified that Brown stated she was one hundred percent sure when she made the identification.
Defendant next cites a portion of the prosecution's closing argument, again referring to Brown's identification testimony:
 How did she identify? Brought to her home. Detectives asked her to look at this. She took her time. She wanted to be accurate. She didn't just pick out someone who was on here. She looked. She had to be sure. Didn't get a chance to see his hair. But, I saw his face very clearly. Both times, I saw him, he had on a hood. I saw his face very clearly. I saw it twice, both times with a hood. (Tr. 236.)
Defendant contends Brown never so testified.
While Brown did not make those statements verbatim, they are reasonable inferences properly made from Brown's own testimony. See State v. Lott, supra, at 165 (noting that prosecution and defense counsel has wide latitude as to what the evidence has shown and what reasonable inferences may be made). Detective Scott testified that he went to Brown's house the night of the robbery with six pictures for her perusal. A couple of times she looked at two of the pictures closely and actually cupped her hands over the pictures because she had seen the man only with a hood pulled tightly around his face. Shortly after that, she picked defendant's picture as the man that robbed her. Moreover, Brown testified she saw defendant twice, once the day of the robbery and once two days earlier. At the time of the robbery, she recognized the face of the man she had seen two days earlier at her place of work.
Even if the prosecution's statements that Brown saw defendant's face "very clearly" were beyond reasonable inferences to be made from the testimony introduced at trial, defendant did not object at trial. Defendant thus waived all but plain error. Because we cannot say that but for the statement the result of the trial clearly would have been different, any error fails to rise to the level of plain error. Long, supra.
Defendant next asserts the prosecution misstated Brown's testimony by stating defendant had his gun pointed at her face. Brown testified the gun was pointed between her chin and her chest. The prosecution's statement departed only minimally, if at all, from Brown's testimony. See State v. Howard (Nov. 15, 1995), Hamilton App. No. C-930963, unreported (finding that a remark made by prosecutor that victim was shot in the back of the head, when in fact victim was shot on the top of the head, was not prejudicial error when the jury was appropriately advised to make its findings on the basis of the evidence alone). Moreover, defendant did not object to the statement, waiving all but plain error. Because the outcome of defendant's trial would not have been affected had the prosecutor stated that the gun was pointed at Brown's chin rather than her face, defendant's contentions are unpersuasive.
Relying on State v. Nott (July 29, 1982), Athens App. No. 1070, unreported, defendant next contends the trial court erred in overruling defendant's objection to the prosecution's statement that defense counsel's tactics were "very similar to a magician." (Tr. 278.) In Nott, the court found reversible error when the prosecution in closing argument referred to defendant as a "flim-flam man" who had defrauded a store with two bad checks he had written. The court noted that a "flim-flam man" used deceit and trickery to get something for nothing; that "if the State could suggest Appellant `flim-flammed' the court by getting appointed counsel, the evidence regarding the element of `intent to defraud' necessary to secure appellant's conviction would have been better substantiated." Id. Here, however, the prosecution referred to defense counsel, not defendant, as a magician. Hence, the prosecution did not attack defendant's character and thus did not bolster any evidence that tended to prove an element of the offense.
Moreover, defendant's argument is unpersuasive when the statement is read in context. Leading up to the comment, the prosecution alluded to defense counsel's closing argument concerning evidence the state had failed to admit, such as no rolled quarters, matching clothes, fingerprints or gun. The prosecution responded by arguing that "none of that stuff is in evidence. That is not what you are to consider in this case. You are to consider the evidence before you. What [defense counsel] did is very, very similar to a magician." (Tr. 278.) After defense counsel's objection was overruled, the prosecution elaborated on what it meant by its comment: "It is very simple for a magician and when they are trying to hide the pen. Look at my left hand and I put the pen in the right pocket. They divert your attention to what's occurred. She diverted your attention from the evidence." (Tr. 278-279.)
Even if the comment was improper, it was not reversible error. It referred to defense counsel, not to defendant, and referenced only defense counsel's approach to the evidence. UnlikeNott, it did not attempt to prove that defendant had committed the crime in conformance with a characteristic suggesting he would commit such a crime. In addition, the trial court at least twice instructed the jury that counsel's closing arguments were not evidence to be considered in its deliberations. See State v. Scott
(June 24, 1997), Franklin App. No. 96APA04-492, unreported (1997 Opinions 2526, 2565). Defendant's substantial rights were not prejudiced by the comment.
Defendant also contends the trial court erred in overruling his objection to the prosecution's suggestion in closing argument that defense counsel was urging the jury to not follow the law:
 * * * They divert your attention to what's occurred. She diverted your attention from the evidence. I am asking you to follow the law. I'm asking you to consider and only consider—
 [Defense Counsel]: Your honor, I object. There's some implication that I asked them not to follow the law. (Tr. 279.)
Contrary to defendant's argument, the prosecution simply asked the jury to follow the law.
Finally, defendant contends the prosecution improperly expressed a personal opinion to bolster Brown's testimony:
 I ask you to hold me in my burden and I ask you to be fair to both the State of Ohio and the defendant. And I believe that if you do that, but most importantly pay attention to the evidence, testimony, to the evidence and the videotape, the still photos, you will find beyond a reasonable doubt the State has met its burden. You will find that this is beyond a reasonable doubt. This is not coincidence. This is not mistake. This is not an accident. This is the man who committed this offense. Thank you. (Tr. 280.)
Even if the foregoing be deemed an expression of the prosecution's belief, it does not rise to the level of plain error. State v. Caldwell (1992), 79 Ohio App.3d 667, 673
(determining that prosecutor's statement during closing argument "I believe all the testimony shows that beyond a reasonable doubt [defendant] purposely took the life of [victim]" was not error because counsel was permitted to "express his contention as to the conclusion which a jury should draw" from the evidence presented); see, also, State v. Santilli (Apr. 25, 1997), Ashtabula App. No. 96-A-0039, unreported (finding that "the prosecutor argued that the evidence showed that appellant was guilty, not that the prosecutor himself believed that appellant was guilty").
For the foregoing reasons, defendant's fourth assignment of error is overruled.
Finally, defendant's fifth assignment of error contends his convictions are against the manifest weight of the evidence. When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt.Thompkins, supra, ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting evidence"); Conley, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230.
Brown testified that two days before the robbery, defendant came to the store where she worked. Defendant played a video game, asked a question about a bus, and then ran out of the store after Brown's employer dropped off money for the store. The day of the robbery, after Brown's employer dropped off money for the store, Brown again saw defendant in the store between 8:45 and 9:00 in the morning, wearing the same blue hooded sweatshirt he had worn two days earlier. After Brown's employer left, defendant pointed a gun at Brown. He told her to give him all the money and he would not hurt her. Brown gave defendant the money from the cash register. Defendant then asked for the rolls of quarters that Brown's employer had brought earlier that day, and for money from Brown's own purse. Brown complied with both requests. After taking all of the money, defendant left the store. Brown identified defendant as the man that she had seen in the store two days before the robbery and also as the man who committed the robbery, first in a photo array the day of the robbery, and then again in court.
Further testimony from workers at nearby stores identified defendant as a man that came into their stores that same morning and tried to sell them rolls of quarters. Mike Kierns, an employee at a nearby gas station, testified to helping a man in a blue hooded sweatshirt between 8:00 a.m. and 8:30 a.m. on the day of the robbery. A freeze-frame picture of a videotape running that day at the gas station showed a man wearing a blue hood at the gas station at 8:32 a.m. Kierns identified the man he saw that morning as the defendant. Kierns then testified that defendant came to the store later that morning at around 11:30 a.m. to sell rolls of quarters.
After Kierns told defendant that he would not buy the quarters, defendant left the store and walked to a nearby bar. An employee of that bar, Dwayne Ray O'Neal, testified he had known defendant as "Tony." Defendant came into the bar around 11:00 a.m. on the day of the robbery and attempted to sell quarters to O'Neal. O'Neal identified defendant as the man from whom he bought quarters that morning.
In addition, the state submitted the earlier noted testimony of Detective Scott regarding Brown's identifying defendant from the photo array.
To be found guilty of aggravated robbery, the state must prove defendant attempted to commit or committed a theft offense and possessed a deadly weapon or dangerous ordnance on his person or under his control during the offense, and either displayed it, brandished it, used it, or indicated that he possessed the deadly weapon. R.C. 2911.01. As to the "theft" element, Brown's testimony provides competent, credible evidence that defendant committed a theft offense as that term is defined in R.C. 2913.02. Brown testified that defendant was the man in a blue hooded sweatshirt that robbed her store and took money from both the store's cash register and her own purse. Nearby store workers identified defendant as the man that came into their stores that morning trying to sell them rolls of quarters. The worker at the gas station even recollected the same blue hooded sweatshirt that Brown testified defendant was wearing when he robbed her store, testimony corroborated by the videotape.
As to the "deadly weapon" element, Brown also testified defendant had a gun, and pointed the gun at her while telling her she would not be hurt "much." Brown's testimony provides competent, credible evidence to find defendant possessed a deadly weapon on his person and displayed or brandished it to Brown. R.C.2911.01(A)(1). The same testimony also provides competent, credible evidence to support the jury's finding that defendant possessed a firearm on or about his person while committing an offense and that he either displayed or brandished the firearm, indicated that he possessed the firearm, or used the firearm to facilitate the offense. R.C. 2941.145(A).
Given the foregoing evidence, the record provides no basis to conclude that the jury clearly lost its way, that a manifest miscarriage of justice occurred, or that defendant's convictions were against the manifest weight of the evidence.State v. Smith (1997), 80 Ohio St.3d 89, 114; State v. Butler
(Oct. 22, 1998), Franklin App. No. 98AP-55, unreported (1998 Opinions 4817, 4825). Accordingly, defendant's fifth assignment of error is overruled.
Having overruled all of defendant's assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
DESHLER and KENNEDY, JJ., concur.